The opinion of the court was delivered by
'Valentine,. J.:
This was an action brought by Drury J. Field against Ellen B. Davis, for damages resulting from injuries to the plaintiff's foot and ankle. It appears that in 1881, and several years prior thereto, the defendant was the owner of a grain elevator in the city of Fort Scott; that the approach thereto on the east side was by an inclined plane, some sixty feet long and ten or twelve feet wide, the east end resting on the ground, and the west end about twelve feet above the ground and connecting with a level floor, which was a part of the elevator building. This elevator was used for the purpose of receiving grain and delivering the same into railroad cars. On January 25, 1881, the defendant, by one of her agents, purchased a wagon-load of oats from the plaintiff, and the plaintiff drove his team, which was a span of mules, with the wagon-load of oats, up the inclined plane and into the elevator, where the plaintiff and a hired man of the defendant commenced to unload the oats. The mules attached to the wagon, either from fright or viciousness, soon became refractory and unmanageable, and backed the wagon out of the elevator upon the inclined plane and against the railing on the south side, breaking the railing, and precipitating the wagon and themselves to the ground below. While the mules were thus backing, the plaintiff jumped from the wagon to the ground, and so crushed his ankle that amputation of his foot and ankle became necessary, and the amputation was performed.
The plaintiff claims that the injury to his foot and ankle resulted from a failure of the defendant to provide a sufficient barrier to prevent the wagon from being backed out of the elevator and off the inclined plane.
*403 The verdict and judgment in the court below were in favor of the defendant and against the plaintiff, and the plaintiff, as plaintiff in error, brings the case to this court for review.
The plaintiff in this court presents two principal matters of alleged error: First, he claims that the court below erred in permitting the defendant to cross-examine the plaintiff, who was a witness in the case on his own behalf, with regard to his residence and his ownership of property; second, he claims that the court below erred in permitting the defendant to ask three of her own witnesses substantially the following question: “You may state whether or not any similar accident in unloading at this place has ever before'occurred, or any accident whatever.” And also that the court erred in giving to the jury the following instruction:
“The defendant did not, by inviting people to trade with her, incur any liability for mere fortuitous accidents that might befall them; but only for such injuries as might occur by some fault or negligence on her part.”
We shall consider these alleged errors in their order.
I. The plaintiff on his direct examination, testified, among other things, as follows: That he was thirty-eight years old; that he resided about ten miles northeast of Fort Scott; that-he first came to Kansas in October, 1858; that he had always lived in the same locality since that time; that he was a farmer, and had always been a farmer ever since he was a man; that he had always been a very hard-working man; that he had constantly worked on his farm; that he had worked some with cattle, but not as a speculator; that he raised grain and fed it to his cattle; that he raised the oats which he sold to the defendant on his farm; and that he took them out of a rail pen on his farm on the day on which he sold them to the defendant. On the cross-examination it appeared that he first resided in Kansas, after coming west, in 1858, but that afterward, and about four years before this accident occurred, he removed into the edge of the state of Missouri, where he resided at the time of the accident and at the time of the trial, and that he owned land both in Kansas and in Mis *404 souri. The defendant then asked the plaintiff how much land he had in Kansas, and how much he had in Missouri; and these questions were objected to, upon the ground, among others, that it was not proper cross-examination. The court below overruled the objection, and the plaintiff excepted. We think the ruling of the court below was correct.
The defendant also asked the plaintiff how many cattle he had, and how many work-teams; to which questions the plaintiff also objected, on the ground, among others, that these questions did not come within the legitimate scope of a proper cross-examination. The court below overruled these objections, and the plaintiff excepted. And again we think the ruling of the court below was correct. The plaintiff had already testified, on his examination in chief, with regard to his farm and farm operations, his place of residence, and that he was a hard-working farmer and cattle raiser, etc., and for that reason we think it was not improper for the defendant to cross-examine with reference to the same subjects — the exact place of his residence, the extent of his farming operations, stock raising, etc., although we do not see that these matters had much to do with the merits of the case; but as they were first introduced by the plaintiff himself, we cannot reverse the judgment of the court below, simply because the defendant chose to cross-examine upon them, and to have them presented in a somewhat different light from that in which they were first presented to the court and jury, on the plaintiff’s examination in chief. But even if the foregoing questions did not come within the legitimate scope of a proper cross-examination, still we cannot see that the matters thus elicited were so prejudicial to the plaintiff’s substantial rights that they should require a reversal of the judgment of the court below. It must be remembered that the witness of whom these questions were asked was the plaintiff himself, and much that he stated, even on the cross-examination, was his own evidence, not given in strict response to the questions put to him by the defendant, but were volunteered on his own account; and *405 therefore we think that the defendant also had a right to cross-examine upon these volunteer statements.
II. The evidence in this case showed that the three witnesses, to whom were put the objectionable questions as to whether any similar accident had ever before occurred at the defendant’s elevator, had been familiarly acquainted with the defendant’s elevator for about five years before the accident occurred, and knew the amount of grain received at such elevator during that time. The evidence also showed that frequently as many as fifty or sixty wagon-loads of grain were received and unloaded at that elevator in one day, and that the number received and unloaded would average about twenty-five loads per day; and yet, notwithstanding the many thousands of loads of grain that had been received and unloaded during the five years previous to the happening of this particular accident, not a single accident óf a similar kind had ever before occurred. We think this evidence was competent. The case of Lewis v. Smith, 107 Mass. 334, relied on by the plaintiff, has no application to this case. That was an action on contract, against a ferryman, for failing to transport, as a common carrier of passengers and teams, across the Connecticut river, the plaintiff’s team, consisting of two mules and a wagon, while this action is one in tort, founded strictly upon alleged negligence, and not upon contract; and there is no pretense in this case that the defendant was an insurer of the plaintiff’s foot and anklef or even of his wagon and mules, as common carriers of goods always are of the goods which they receive for transportation. The following cases come nearer being applicable to this case, to wit: Kelsey v. Barney, 12 N. Y. 425; Quinlan v. The City of Utica, 18 Hun, 217; Kent v. Town of Lincoln, 32 Vt. 591; Dougan v. Champlain Transportation Co., 56 N. Y. 2; 1 Wharton on Ev., §§ 41-44, and cases there cited.
The main question involved in the present case is, whether the elevator and the east approach thereto were reasonably safe for teams with loaded wagons to be driven up the approach and into the elevator and unloaded'; or in other words, *406 were they such as a reasonably prudent person, exercising reasonable diligence, would consider safe for the purposes for which they were designed? And it seems to us that proof that thousands of teams, with loaded wagons, had for a period of five years been driven up the inclined plane and into the defendant’s elevator and unloaded, and the teams driven out again, and that no accident had ever before occurred, would be some evidence that the inclined plane and elevator were reasonably safe for that purpose, and that a reasonably prudent person, exercising ordinary diligence, would consider them safe; and for this reason we think the evidence was competent. If an accident had ever before occurred at that elevator, it would have been an easy matter for the plaintiff to have ascertained the fact, and to have shown it to the Jury. In the present case, the plaintiff’s mules were large and strong, weighing about 2,200 pounds; they were evidently not of the most gentle nature; they backed the wagon, which still had about half a load of oats in it, over a block of wood about a foot long and four inches square, which had been placed behind one of the hind-wheels, of the wagon, and against the railing of the inclined plane, with great force and violence, which broke the railing and precipitated the wagon and the mules to the ground below. It would seem from the evidence that no such thing had ever before happened. Not even the railing had ever before been injured to any extent. This would seem practically to prove that the inclined plane and the elevator, with all their appliances and accompaniments, were reasonably safe. Of course, independent facts, not tending to prove any issue in the case, are not admissible in evidence; but facts which do tend to prove some issue in the case, although seemingly independent, are admissible, unless they are incompetent from some other reason than merely that they are independent facts.
The plaintiff also complains that the word “accident” was used. No specific objection was made to the use of . this word in the court below, and' the only manner in which any question was raised with reference thereto was by objecting *407 to the evidence upon the ground that it was “incompetent, immaterial and irrelevant, not a proper question, and because it does not reflect on any issue in this case.” There was no ■objection made, nor exception taken, to the instruction of the court below which contains this word. Now such word is often used in similar cases, and is probably about the best word that could be used in such cases. It has various shades of •meaning; but in such cases as in this, it probably means an event from some cause whose nature and character are yet unknown, but which is submitted to the court and jury upon the evidence for the purpose of having the same duly and legally ascertained and determined. We think it is fair to call such an event an accident, until its nature is legally ascertained, and the event known to be either a culpable consequence of some negligent act or omission, or an innocent, unforeseen, fortuitous casualty, for which no one is culpably responsible. We have heard the word used so often in similar eases, that it does not seem out of place to us, and we do not think the jury could have been misled by it.
The judgment of the court below will be affirmed.
All the Justices concurring.