No. 20,890.

JOHN L. COOK, *Appellant*, v. THE LEAVENWORTH TERMINAL RAILWAY AND BRIDGE COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

1. PUBLIC TOLL BRIDGE—*Duty Toward a Drunken Pedestrian—Instructions.* Instructions defining the duty of a public toll bridge toward a drunken pedestrian examined, and held favorable to plaintiff.

2. SAME. A public-service corporation owes no higher duty to a drunken patron than to a sober one, unless it knows or has reason to believe that such patron is so much incapacitated with intoxicants that he can not take care of himself.

3. SAME—*Train Approaching—Allowing Pedestrians on Bridge—Evidence—Custom—No Previous Accidents.* Where a plaintiff who is injured while crossing a toll bridge by being struck by a passing train bases his charge of negligence against the bridge company on the ground that custom and reasonable care required the defendant not to allow pedestrians on the bridge while trains were crossing it, it

was competent for the defendant to prove that there was no such custom, that there was no danger to persons exercising ordinary prudence in passing trains on the bridge, and that hundreds of people had met and passed trains on the bridge daily for twenty years, and that no previous accidents had been occasioned thereby.

4. SAME—*Evidence on Issue of Custom.* Under an issue of custom and a question as to the requisite requirements of reasonable care, negative evidence which does not tend to raise collateral or impertinent issues is admissible under the rules and limitations announced in *Field v. Davis,* 27 Kan. 400; *City of Topeka v. Sherwood,* 39 Kan. 690, 18 Pac. 933; *Cunningham v. Clay Township,* 69 Kan. 373, 76 Pac. 907.

5. APPEAL—*Excluded Evidence Not in Record—Not Reviewable.* Rule followed that excluded evidence which is not brought on the record in conformity with section 307 of the civil code can not be considered on appeal.

6. EVIDENCE—*Photographs.* Where no prejudice is disclosed, a ruling that photographs offered in evidence might be admitted "for what they are worth" is not error.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed June 9, 1917. Affirmed.

*Arthur M. Jackson,* of Leavenworth, for the appellant.

*A. E. Dempsey,* of Leavenworth, for the appellee; *John Barton Payne,* of Chicago, Ill., of counsel.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff was severely injured by a Rock Island train while he was crossing the defendant's bridge over the Missouri river between Leavenworth, Kan., and Drydale, Mo. The bridge is a toll bridge erected by authority of congress and constructed on plans approved by the war department, and is used by railroads, vehicles and pedestrians. Plaintiff brought this action against the bridge company, alleging that he purchased from defendant's agent a ticket which authorized and entitled him to cross the bridge from Leavenworth to Drydale in safety, and that the defendant's agent told him to proceed and told him that he could do so in safety, and that in reliance thereon he started eastward across the bridge, and when he was about half way an accommodation train of the Rock Island railway approached him from the east, and that there was not room for him between the train and the guard

Cook v. Railway and Bridge Co.

rail of the bridge, and that he, believing his life was in danger, turned and ran westward, but the train overtook him and he clung to the railing while hot and burning steam from the locomotive enveloped, blinded, burned and confused him, and that the locomotive struck and knocked him down whereby he sustained his injuries.

The defendant's answer pleaded that the plaintiff was under the influence of liquor, and insisted, notwithstanding the protest of the defendant's toll agent, in going upon the bridge after being informed that a train was about to cross from the east; that there was ample space for plaintiff and the train to pass in the usual and customary manner; that on account of plaintiff's intoxicated condition he threw himself against the side of the train, which caused his injuries; and that at all times there was ample space for a pedestrian and train to pass if the pedestrian exercised ordinary care for his own safety.

From a general verdict and judgment for defendant the plaintiff appeals, specifying the following errors:

"1. Inasmuch as the defendant, by its amended answer and evidence, introduced the doctrine of last clear chance into the case, the trial court erred in giving to the jury instructions numbered 1, 2, 3, 4, 5 and 7, requested by defendant.

"2. The trial court erred in allowing the defendant, over the continuous objections of plaintiff, to introduce the testimony of many witnesses, to the effect that no previous accident had occurred on the bridge; that they had never known of a previous accident on it and had no difficulty in crossing it.

"3. The trial court erred in refusing to allow the plaintiff to show that since the accident the defendant bridge company has placed a board walk, outside the railing, on the south side of the bridge.

"4. The trial court erred in allowing defendant to introduce certain photographs in evidence and in allowing Oliver Ousler, the bridge superintendent, to give certain testimony relating thereto."

All the facts put in issue by the pleadings are conclusively resolved in favor of the defendant by the general verdict, so that phase of this lawsuit needs no attention on appeal.

Examining the errors assigned in the order of their presentation, it is not quite clear how the doctrine of last clear chance is involved in this case, nor would prejudicial error necessarily follow if it were. It is not enough to disturb a judgment that some error or impropriety transpires in a trial. It is necessary that the appellant go further and show that the matter

complained of prejudicially affected the net result. (Civ. Code, §§ 141, 581, Gen. Stat. 1915, §§ 7033, 7485; *Cox v. Chase,* 99 Kan. 740, syl. ¶ 11, 163 Pac. 184.) But laying aside mere cavil about doctrines, and considering the instructions themselves, the trial court gave eight instructions at plaintiff's request, and seven at the request of defendant. These are too long for reproduction here, but the court has diligently and critically examined them. Those formulated by the plaintiff mainly outlined the law of the case under which plaintiff should prevail if the facts proved would permit it, and those formulated by defendant stated the law of the case if the facts should be resolved as pleaded and testified to by defendant. No inconsistency inhered in the instructions as a whole when read and considered together; and this is the attitude and method by which the jury should and presumably did consider them. Of course, if appellant's second specification of error relating to the admission of incompetent testimony is meritorious, the instruction directing the jury's attention to the legal effect of the facts established by such incompetent testimony would be prejudicial error. The question of the incompetency of the evidence will be considered in its place. The plaintiff could only recover on the grounds of negligence alleged in its petition. The allegation in the answer asserting the drunkenness of the defendant and his contributory negligence in attempting to cross the bridge in an intoxicated condition were a proper subject to be covered by the instructions. One of the instructions prepared by plaintiff and given to the jury reads:

"3. You are further instructed that if you believe, from the evidence, that the plaintiff was in such an intoxicated condition at the time he purchased a ticket or toll entitling him to cross said bridge as to render him incapable of taking proper care for his safety, and the defendant, at that time, knew this to be a fact, a greater duty rested upon said defendant to guard and protect the plaintiff from injury than would have been required of it had said plaintiff not been under the influence of intoxicating liquor."

The complemental instruction on this point given at defendant's request reads:

"4. The jury are further instructed that the defendant bridge company was under no obligation to anticipate or foresee that the plaintiff Cook was not or would not be in a sober condition, if he was not sober, or able to take care of himself, if he was not able to do so, and owed no other or different duty toward him than it owed toward others of the

general public, and if the plaintiff, by reason of his intoxication or other negligence, unnecessarily exposed himself to risk or danger which caused or contributed to his alleged injuries, he has only himself to blame therefor and can not recover damages from the defendant."

The latter instruction was necessary to make a complete statement of the law covering this feature of the case, without which the defendant's rights would have been overridden and disregarded. (*McIntosh v. Oil Co.*, 89 Kan. 289, 131 Pac. 151; *Little Rock Ry. & Electric Co. v. Billings*, 173 Fed. 903 [C. C. A.], 19 Ann. Cas. 1173 and Note.) The two instructions do not conflict; they properly supplement each other. If the defendant's agent had known or had reasonable grounds for believing that the plaintiff was so thoroughly incapacitated by intoxication that he could not take care of himself it would, perhaps, have been his official duty—at least it would have been expected of him as a natural impulse of humanity—to prevent, if possible, his going on the bridge when a train was approaching. This is somewhat akin to the doctrine of "last clear chance." But nothing in the evidence discloses that the agent knew or had reason to believe the plaintiff was so drunk that he could not take care of himself. The plaintiff's comrade bought the tickets for himself and plaintiff, and when the agent told them a train was coming and if they would wait a few minutes it would be over, the one who bought the tickets said they had passed the train many a time on the bridge. The agent testified that he thought they were drunk, but not staggering, and he let them pass, as was his custom with all pedestrians who appeared to be able to take care of themselves. The statement of plaintiff's comrade would tend to dissipate any doubt which the agent might have as to the plaintiff's capacity to care for himself. The court is of opinion that the instructions quoted and the others given fairly covered the law applicable to these circumstances.

Was it error to permit the defendant's numerous witnesses to testify that they were familiar with the bridge and had met and passed trains on the bridge many times, that hundreds of people crossed the bridge without accident every day and every night? The plaintiff's petition alleged that it was the usual custom of the defendant to sell tickets to pedestrians when trains were not due, and that the exercise of reasonable

care required the defendant not to allow pedestrians to cross at times when trains were due or about to cross the bridge. Defendant's answer put the latter allegation squarely in issue. Plaintiff introduced some evidence tending to support it. It would seem, therefore, that defendant's evidence to the contrary was competent on the issue which plaintiff tendered. The case of *Ireton v. Ireton*, 59 Kan. 92, 52 Pac. 74, cited in condemnation of this, merely holds that incompetent evidence is not rendered competent because the party introducing it had set it up in her pleadings and no motion had been made to strike it out. But here the evidence objected to was proffered to combat the allegations of the pleadings and evidence of the adverse party. Surely what the plaintiff may allege, the defendant may deny; and what the plaintiff seeks to prove, the defendant may endeavor to disprove. But plaintiff argues that this evidence does not show that the many pedestrians who daily passed trains on the bridge were intoxicated; that they did not meet the same train or one exactly similar, at the same time of day—in other words, that the conditions under which the witnesses had passed the bridge and had seen others pass the bridge in safety were not like those under which the plaintiff was injured, and that such evidence was therefore incompetent and irrelevant. This cuts the matter a little too fine. There is no reason to believe that there was so much difference in the width of engines and cars as to materially increase the hazard, if there was a hazard, to a sober and ordinarily careful person in meeting and passing a train on the bridge; and the distinction between the extent of the company's responsibility to sober and to drunken patrons was most favorably pointed out in the instructions. The defendant could not prove its whole defense at once. Under the negligence alleged and testified to by plaintiff it was incumbent upon the defendant to prove that its bridge was safe for ordinary pedestrians to meet trains on the bridge under ordinary conditions, and that it was not necessary to forbid them to enter the bridge when a train was approaching. The evidence was competent for such purposes. (*Field v. Davis*, 27 Kan. 400; *City of Topeka v. Sherwood*, 39 Kan. 690, 18 Pac. 933; *Cunningham v. Clay Township*, 69 Kan. 373, 76 Pac. 907; 1 Wigmore on Evidence, §§ 444, 445, 458.)

In 32 L. R. A., n. s., 1161-1164, is part of an extended note showing the conflict of authority as to the admissibility of negative evidence; and the Kansas case, *Field v. Davis,* supra, is cited among those which permit such evidence when its admission is not likely to carry the inquiry too far afield or to raise collateral or impertinent issues.

Even the matter of the escape of steam from the engines passing pedestrians on the bridge was shown by some of the witnesses not to have been unusual or serious. This matter was covered by an instruction strongly favorable to the plaintiff, and it should be kept in mind that it was the bridge company, not the railroad company, which was sought to be held, partly on account of the escaping steam and its consequences. Moreover, the trial court fully restricted the criticised evidence to its proper scope:

"4. You are further instructed, that even if you believe from the evidence, that many other persons had crossed the bridge of the defendant on foot in safety, before the night of the plaintiff's alleged injury, that fact would not defeat a recovery in this case if you further believe, from the evidence, that said defendant, considering all of the circumstances surrounding the crossing of said bridge by said plaintiff on the night in question, did not exercise reasonable and ordinary care to keep said plaintiff off said bridge or to permit him to cross said bridge on foot in safety."

The third assignment of error relates to the exclusion of evidence which, it is asserted, would show that a board walk outside the railing has been placed on the south side of the bridge. The excluded evidence was not brought upon the record by affidavits, deposition or testimony supporting the motion for a new trial, and can not be considered on appeal. (Civ. Code, § 307; *Hamilton v. Railway Co.,* 95 Kan. 353, 148 Pac. 648; *Scott v. King,* 96 Kan. 561, 152 Pac. 653.)

Another error is based on the introduction of certain photographs of the bridge. Plaintiff's objection reads:

"Objected to because they will not help the issues; they would not show the distance from the track to the sides of the bridge; they are taken very close up to the west end, and are deceptive in that particular; they are not taken when a train is crossing the bridge, or this Rock Island train in particular; and are objected to for the reason they are incompetent, irrelevant and immaterial.

"The Court: You do not object to them because they are not properly identified?

[Counsel for Plaintiff]: "No, I presume they are actual photographs of the bridge; but I think they are incompetent because they would not help the jury any except as to the general appearance of the bridge."

The court has examined the photographs and can not see how their submission to the jury could have prejudiced the plaintiff, and the trial court's ruling that they might be admitted "for what they were worth" was not error. (*Higgs v. "Soo" Ry. Co.*, 16 N. D. 446, 15 L. R. A., n. s., 1162; *Hughes v. State*, 126 Tenn. 40, Ann. Cas. 1913 D, 1263 and Note; *Dederichs v. Railroad Co.*, 14 Utah, 137, 46 Pac. 656, 35 L. R. A. 802.)

Nothing approaching the gravity of reversible error is disclosed in this appeal, and the judgment of the district court is affirmed.