No. 43,099

L. D. MORLAN and GENEVA MORLAN, his wife, *Appellants,* v. ROBERT J. SMITH, *Appellee.*

(380 P. 2d 312)

Opinion filed April 6, 1963.

*Gerald L. Goodell,* of Topeka, argued the cause, and *Lester M. Goodell, Marlin S. Casey, Raymond Briman, Murray F. Hardesty, Wayne T. Stratton* and *Robert E. Edmonds,* all of Topeka, and *Steadman Ball, J. W. Lowry, William E. Stillings* and *Robert D. Caplinger,* all of Atchison, were with him on the brief for the appellants.

*Terence D. O'Keefe,* of Atchison, argued the cause, and *Maurice P. O'Keefe, Sr., Dolan McKelvy* and *Maurice P. O'Keefe, Jr.,* all of Atchison, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This was an action by parents to recover for the alleged wrongful death of their six-year-old son as the result of being struck by an automobile driven by defendant.

The jury returned a verdict for defendant and made special findings. Judgment for defendant was entered thereon, and plaintiffs have appealed from the order overruling their motion for new trial, and specify a number of alleged trial errors.

The facts are not in dispute.

At about eleven o'clock a. m. on Thanksgiving Day, November 24, 1960, defendant, a resident of Atchison, was driving east on East 34th Street in the city of Topeka. His wife and baby were in the front seat beside him. They were on their way to spend the day with relatives who lived in the near vicinity. Plaintiffs lived on the south side of East 34th Street. The area was completely residential. Their six-year-old son, together with several other children, was

playing in a neighbor's yard on the north side of the street about six or eight feet north of the curb. The street was paved and the day was dry and clear. A car was parked on the north side of the street, heading west, near where the children were playing. Another car was parked on the south side of the street, heading east, approximately in front of plaintiffs' residence which was located diagonally southeast from where the children were playing. As defendant drove in an easterly direction down the street he noticed the children playing and scuffling in the yard on the north side of the street. He did not sound his horn or give any other warning of his approach. As the children were playing plaintiffs' son apparently was hit in the stomach. He sort of doubled over and started to run for home. In doing so he "darted out" from behind the automobile which was parked on the north side of the street and was hit by the left front end of defendant's car. Defendant did not see the boy and did not know what had happened until he heard the "thump." He was driving between fifteen and twenty miles per hour. The boy died immediately. He was forty-six inches tall and the height of the car parked on the north side of the street was approximately sixty-two inches. Shortly after the accident police officers arrived on the scene to make an investigation.

The jury was given twenty-five instructions. Among them were the following:

"No. 9.

"Under the law of Kansas, a child of tender years is not required to exercise the same care and judgment as an adult, and in this connection, you are instructed that a child of six years of age cannot be held guilty of negligence which will prevent his parents from recovering damages for the child's death, if you find said death resulted from the defendant's negligence."

"No. 17.

"You are instructed that a motorist driving on a street where children are at play is required to keep his motor vehicle under control and to so manage his car as to be able to turn aside or stop and avoid an accident in the light of the apparent risk that children may not exercise the care for their own safety and protection that adults are expected to exercise.

"No. 18.

"Where the driver of a motor vehicle knows of the presence of a child or children in, near, or adjacent to the street or highway or by the exercise of ordinary care should have known that children may be reasonably expected to be in the vicinity, you are instructed that the driver of such motor vehicle must anticipate that a child may suddenly cross the sreet or highway in front of his vehicle and must exercise the care which an ordinary, prudent man

would exercise to avoid striking any child or children who might suddenly cross such street."

Over plaintiffs' objection, the jury also was given this instruction:
"No. 11.

"You are instructed that the 1959 Supplement to the General Statutes of Kansas, 1949, provides as follows:

"Section 8-556. *Pedestrians' Right of Way at Crosswalks; Control Signals.* (*c*) No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.

"The General Statutes of Kansas for the years 1949, provides as follows:

"8-557. *Crossing at Other than Crosswalks.* (*a*) Every pedestrian crossing a roadway at a point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway."

Six special questions were submitted. They, and the answers thereto, are:

"1. Did William Douglas Morlan immediately prior to the accident understand and appreciate that injury or death was likely to ensue in crossing the streets, unless he was careful in avoiding moving vehicles?

"Answer: Yes.

"2. Do you find that William Douglas Morlan ran into East 34th Street from behind a parked automobile?

"Answer: Yes.

"3. At what rate, in miles per hour, was defendant driving his automobile at the time William Douglas Morlan ran into East 34th Street from behind a parked automobile?

"Answer: 16 to 20 miles per hour.

"4. After William Douglas Morlan appeared in front of defendant's car, did defendant have sufficient time to avoid striking him?

"Answer: No.

"5. If you should answer the last question in the affirmative, then state why defendant failed to avoid striking him?

"Answer:

"6. If you find the defendant guilty of negligence causing the death of William Douglas Morlan, state the act or acts of negligence of which the defendant was guilty.

"Answer:"

Among the points urged by plaintiffs for a reversal is that while one of the police officers was testifying he stated that "no arrests were made." It appears, however, that the statement was stricken and the jury admonished to disregard it.

Another point made by plaintiffs is this: Based upon their investigation, the police officers made out an "accident report." Over plaintiffs' objection, a copy of it was introduced in evidence. It

contained the statement "no improper driving indicated." In his closing argument to the jury counsel for the defendant referred to this report and laid much stress on the mentioned statement as being proof that defendant was in no way negligent.

We think plaintiffs' contention as to the matter is well taken and that the admission of the report containing the statement in question was prejudicial error. In the first place, the report was hearsay, and, secondly—the statement, "no improper driving indicated," was a pure conclusion on the part of the investigating officer dealing with the very question of negligence which the jury was impanelled to try. In fact, that was the only issue in the case. In this connection, reference is made to the case of *Derrick v. Blazers*, 355 Mich. 176, 93 NW 2d 909, reported at 69 A. L. R. 2d 1143, and the annotation commencing at page 1148, same volume.

Another point strenuously urged by plaintiffs is the giving, over their objection, of instruction No. 11, above quoted, dealing with the question of the statutory duties of a pedestrian when crossing a street—which, in effect, told the jury that a six-year-old child is held to the same degree of care as an adult. Plaintiffs concede that in instruction No. 9, above quoted, the jury was told that a six-year-old child cannot be held guilty of negligence which will bar recovery by his parents provided, of course, it is found that death resulted from defendant's negligence—but contend that instruction No. 11 was so contradictory to and irreconcilable with instruction No. 9 that the giving of it resulted only in confusing the jury and constituted prejudicial error.

We think this point also is well taken. Under the facts of this case, instruction No. 11 clearly was improper and uncalled for and should not have been given. The rule of law with respect to the negligence of an adult and that of a child of tender years is quite different (*Weber v. Wilson*, 187 Kan. 214, 220, 356 P. 2d 659). And neither are we able to say that instructions Nos. 9, 17 and 18, all above quoted, removed its prejudicial effect.

Other matters argued by the parties require no discussion. For the reasons stated, it follows that the judgment is reversed with directions to grant a new trial.

PRICE, J., dissenting: In my opinion the decision in this case is an illustration of the familiar saying that "hard cases make bad law."

I will concede—for the sake of argument—that the statement

in the accident report—"no improper driving indicated"—should not have been admitted, and that instruction No. 11 should not have been given—but, under the undisputed facts of this case, I am unable to say that either of the "errors" could have prejudicially affected the result. Harmless error is one thing—prejudicial error is another—and for the latter only should reversal be ordered. (*Home Ins. Co. v. Atchison, T. & S. F. Rly. Co.*, 189 Kan. 316, 319, 320, 369 P. 2d 338, and cases cited.) Under the provisions of G. S. 1949, 60-3317, this court is directed to disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining where it appears, upon the whole record, that substantial justice has been done by the judgment or order of the trial court.

No one contends this this six-year-old boy was guilty of contributory negligence so as to bar recovery by his parents. There was only one issue in the case, and it was whether defendant was guilty of negligence which was the proximate cause of the boy's death. Plaintiff's evidence contained nothing to establish that he was. All of the evidence in the case was such that the jury returned the only verdict that in all honesty it could return. Any possible "damage" that might have resulted from the giving of instruction No. 11 most certainly was cured by instructions Nos. 17 and 18, both of which are set out in full in the opinion written for the court. In fact, at the hearing on the motion for a new trial counsel for plaintiffs commented that notwithstanding the court had, for all practical purposes, "instructed a verdict for the plaintiffs," the jury "apparently found this man free from negligence." In denying the motion the trial judge stated:

". . . but I think, gentlemen, what you are faced with in this case is a case where the jury simply found no negligence on the part of the defendant and, frankly, the Court must concur with the jury's findings. Now to argue otherwise in a situation like this, would be to say that no one can use a street where children are playing in a yard adjacent to the street. Now I think this is a plain case of no negligence. Jury so found. Motion for new trial is overruled."

I agree with the foregoing comment. The situation presented here is one of frequent occurrence to all drivers on city streets. The result was tragic, of course, but the law requires more than that to impose liability. I would affirm the judgment.

PARKER, C. J., and SCHROEDER, J., concur in the foregoing dissent.