No. 49,058

ADNAN J. TIMSAH, AMAL Z. TIMSAH, and LENA A. TIMSAH and TALAL A. TIMSAH, Minors, by and Through Their Father and Natural Guardian, ADNAN J. TIMSAH, *Appellants,* v. GENERAL MOTORS CORPORATION, *Appellee.*

(591 P.2d 154)

Opinion filed February 24, 1979.

*Robert W. Kaplan,* of Kaplan, McMillan & Klinge, of Wichita, argued the cause and was on the brief for the appellants.

*Richard C. Hite,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is a products liability case brought by members of the Timsah family for personal injuries and property damage sustained in a single vehicle accident. The theories of recovery alleged against the manufacturer of a 1972 GMC 2-ton dump truck were (1) breach of an implied warranty of fitness and merchantability arising from an alleged defective power steering hose, and (2) negligence of the manufacturer in designing, testing, inspecting and equipping said vehicle with said defective power steering hose. The truck was purchased in September. The accident occurred the following month. It is contended the hose failed under pressure and caused a steering disability. The plaintiffs were unsuccessful below. Trial of the case resulted in a jury verdict for defendant, General Motors Corporation. The plaintiffs have appealed.

One question raised by appellants is whether the verdict is contrary to the evidence. The evidence introduced at the trial was sharply conflicting but in view of the general verdict for defendant all controverted issues of fact were resolved against the appellants and if supported by evidence or by reasonable inferences to be drawn from the evidence the verdict must stand. *Montgomery v. Morgenson,* 213 Kan. 167, 515 P.2d 746 (1973). We will review the evidence in a light most favorable to the appellee.

The truck had been driven without difficulty some 1700 miles prior to the accident. Mr. and Mrs. Timsah and their two small children left their home in Wichita and drove to Van Orme, Texas, which is 25 to 30 miles south of San Antonio. On the way down the family stopped overnight in Dallas, Texas. The purpose

of the trip was to pick up a load of nursery stock. After arrival in Van Orme the truck was loaded and the family left at 2:30 p.m. on October 19. The accident occurred just south of the Wellington interchange on the Kansas Turnpike at 6:00 a.m. on October 20. A distance of about 600 miles had been traveled in approximately fifteen hours. However, the fifteen hours included two rest stops of two hours each. The family did not stop to sleep in a motel. Mr. Timsah testified that prior to the accident he was driving north in the right hand lane. His testimony as to how the accident happened was as follows:

"A. We left the roadside park going toward Wichita and then everything was normal. We were listening to the radio and just about the Interchange, the radio stopped for certain reasons so my wife asked me and then I put my hand on the steering wheel, left hand, that is and I had my knob in the right hand and I started back and forth and it won't respond and I pounded it two or three times and it won't respond for a while and then, at this time, I looked and I see that I am not no longer in the center of the lane. I was driving on, which is the right lane, so I tried to turn, straighten up the truck to the center lane and the course of my turning left, something happened and then I felt in my hand that the steering wheel went rigid and kind of locked and, by the time I tried to turn right, it was already late and I was right in the ditch, two seconds."

Appellant Timsah further testified he had been driving at a speed of from 55 to 60 m.p.h., had taken his foot off the accelerator, but did not apply the brakes. After crossing the median strip the truck turned over, either in the left hand ditch or on the left shoulder of the road.

The cause of the accident was attributed by the appellants to a malfunction in the steering system. The truck was equipped with dual capabilities for steering, a mechanical and a power assist steering system. The testimony indicates that either system will function independently of the other, and if the power assist system quits while the truck is being driven the truck can be steered by the mechanical system, although more pressure must be exerted. The power assist system has a hydraulic fluid reservoir and uses separate left and right turn high pressure hoses. The left turn hose was introduced in evidence at the trial as the defective component which failed and caused the truck to go out of control. The two independent steering systems on this type truck are in contrast to the type of power steering system on passenger cars which has no back-up mechanical system.

When introduced in evidence at the trial the left turn hose had

three separate breaks in it. The defendant's expert witness testified that the breaks were caused by perforations or cuts which could not have occurred from failure under internal pressure. The reason given for this conclusion was that the hose showed no bulging or ballooning. He testified as to the manufacturer's test requirements for the hoses used on this model truck, which requirements were far in excess of the stress caused by down-the-road driving conditions.

All witnesses who examined the truck after the accident, including Karl Gragg, the plaintiffs' expert, said that the oil reservoir in the power steering system contained hydraulic fluid when they examined the truck after the accident. They further testified that if the hose had ruptured while the steering system was being used, the oil reservoir would have been drained in a very few seconds. A total loss of oil, however, would have caused only a partial loss of steering. The mechanical system alone will permit the driver to turn the front wheels. There was testimony from a mechanic and from defendant's expert that they tested the steering after the truck had been pulled off the road. The doors to the truck were damaged so they could not be opened. However, the two witnesses were able to turn the front wheels of the truck by turning the steering wheel while reaching through the broken windshield. They concluded the steering system was working on the truck after the accident.

From the foregoing evidence the jury might reasonably infer that the hose was not the cause of the accident. It might also have been inferred that the perforations in the hose occurred after the accident and were not caused by a defect in the hose. There was testimony to the contrary but when a verdict is attacked on the ground it is contrary to the evidence, it is not the function of this court on appeal to weigh the evidence or pass on the credibility of the witnesses. If the evidence with all reasonable inferences to be drawn therefrom, when considered in a light most favorable to the successful party below, will support the verdict this court should not intervene. *Steele v. Harrison,* 220 Kan. 422, Syl. ¶ 1, 552 P.2d 957 (1976). The verdict for defendant in this case is not contrary to the evidence.

The appellants present various procedural questions which arose during the trial of the case and which we must consider on appeal. The first concerns the admission into evidence of a

diagram of a portion of the highway at the accident scene. The diagram was part of a highway patrol investigation report. The patrolman who prepared the report and drew the diagram was later killed in the line of duty. He was not available to testify at the trial. No one who visited the scene of the accident testified at the trial to verify the accuracy of the diagram. The deceased patrolman's superior officer testified that the diagram had been prepared the day of the accident and it had been turned over to him by Trooper Thornton in the regular course of Thornton's duties. The diagram was then admitted into evidence under the authority of K.S.A. 60-460(*d*)(3) which provides:

"Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

"(*d*) *Contemporaneous statements and statements admissible on ground of necessity generally. . . . (3) if the declarant is unavailable as a witness, a statement narrating, describing or explaining an event or condition which the judge finds was made by the declarant at a time when the matter had been recently perceived by the declarant and while his or her recollection was clear, and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort.*" Emphasis supplied.

The diagram prepared by the trooper depicts 510 feet of a four lane highway separated by a median strip. Wheel marks are indicated on the diagram as leaving the right shoulder of the highway and proceeding off the shoulder for 240 feet. Marks indicated on the diagram then proceed in a northwesterly direction back across the shoulder, across both northbound lanes of traffic, across the median strip, into the southbound lanes of traffic. Then a loop appears in the marks on the diagram leading to a small rectangle which depicts a truck at rest crosswise to the southbound lanes. The resting place of the truck extends from the shoulder of the road across a portion of the two southbound lanes of traffic. In the upper left portion of the diagram are printed the words "truck lying left side down." In the lower right portion of the diagram are written the words "wheel marks by right wheels. dual's on rear." From this legend appears an arrow pointing toward the marks on the diagram depicting wheel marks as they leave the shoulder of the road to the right of the northbound lanes. In addition there are two dots appearing where the wheel marks first leave the shoulder of the road on the right side. The north dot has an arrow pointing to it, followed by the words

"Reflector Post." The south dot also has an arrow pointing to it followed by the notation "Mile Post 219 broken off."

This diagram was highly important to the defense. There was little evidence introduced to establish the truck left the highway on the right side as it proceeded north. No witness testified that a mile post had been broken off at the scene of the accident. This diagram supplied the missing link for the defense. It supported the expert's statement that the power steering hose had been perforated by contact with an external object, the post. The question of admissibility of this diagram under these circumstances becomes critical.

This court had occasion to consider the admissibility of diagrams illustrating the scene of an accident in *Sulkis v. Zane,* 208 Kan. 800, Syl. ¶ 2, 494 P.2d 1233 (1972), where it adopted the following general rule:

"Generally, a diagram illustrating the scene of an accident and the relative location of objects, *if proved to be correct,* is admissible in evidence to enable the jury to understand and apply the established facts to the particular case. However, where marks or notations, the import of which is not clear, appear upon a map or diagram and the person who made them is not produced as a witness, the map or diagram is inadmissible." Emphasis supplied.

Hearsay objections to accident scene diagrams will fail in the usual case where the officer who drew the diagram is called as a witness in the action. This is so because the officer is present at the trial and available for cross-examination. The hearsay exception in K.S.A. 60-460(a) then applies. See 3 Jones on Evidence § 17:48 (6th ed. 1972).

Hearsay is defined in K.S.A. 60-460 as "Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated." A diagram is a statement as defined in K.S.A. 60-459(a), being a written expression of the officer's perception of the accident scene. The diagram in this case was offered to prove the truth of the officer's written expression. As previously noted the trial court admitted the diagram under an exception to the hearsay rule, K.S.A. 60-460(d)(3). No other exception was asserted as basis for its admission. This court in *Smith v. Estate of Hall,* 215 Kan. 262, 266-267, 524 P.2d 684 (1974), explained this statute as follows:

"We think the trial court has missed the thrust of clause (3). Clauses (1) and (2) are codifications of the common law rule of *res gestae,* the first requiring that the statement be strictly contemporaneous with the act described, and the second that

it be made while the declarant was still under the 'stress of a nervous excitement' caused by the act described. See generally, Wigmore on Evidence (3rd Ed.), §§ 1747, 1750; Hatcher's Kansas Digest (Rev. Ed.), *Evidence*, § 310.

"Clause (3), however, is a newcomer to our law of evidence, designed to meet the occasional 'necessity' for using hearsay caused by the unavailability of the declarant to testify in person. See Wigmore, op. cit. supra, § 1420, where the author notes:

" 'Where the test of cross-examination is *impossible of application,* by reason of the declarant's death or some other cause rendering him now unavailable as a witness on the stand, we are faced with the alternatives of receiving his statements without that test, or of leaving his knowledge altogether unutilized. . . . The mere necessity alone of taking the untested statement, instead of none at all, might not suffice; but if, to this necessity, there is added a situation in which some degree of trustworthiness more than the ordinary can be predicated on the statement, there is reason for admitting it as not merely the best that can be got from that witness, but better than could ordinarily be expected without the test of cross-examination.' (Italics in original.)"

The requirements under the exception specified in K.S.A. 60-460(*d*)(3) are: (1) The declarant is unavailable as a witness, (2) the statement narrates, describes or explains an event or condition, and (3) the judge finds [a] the declarant made the statement at a time when the matter had been recently perceived by him and while his recollection was clear, [b] the declarant made the statement in good faith prior to the commencement of the action, and [c] the declarant made the statement with no incentive to falsify or to distort. *State v. Brown,* 220 Kan. 684, 687, 556 P.2d 443 (1976).

At the time of trial Trooper Thornton was dead and thus unavailable. See K.S.A. 60-459(*g*)(3) for definition of the word unavailable. There is no question Trooper Thornton drew the diagram in good faith as part of his official duty prior to the commencement of the action and without incentive to falsify or to distort. The point of controversy in the present case, however, is whether Trooper Thornton accurately expressed in the diagram the physical facts perceived at the scene. " 'Perceive' means to acquire knowledge through one's own senses." K.S.A. 60-459(*c*). Appellants put forward a number of theories to support a conclusion that the officer did not perceive what he reproduced in the diagram. Appellants first argue that Trooper Thornton did not perceive the event in question because he did not witness the accident. Appellants further argue that the diagram contained marks, notations and comments which cannot be more than conclusions on the part of the officer.

Appellee responds that the diagram accurately records the officer's perception at the accident scene, not of the accident. Therefore the officer does record his perception of the conditions present at the scene. The appellee denies that the diagram contains conclusions of the officer. It says, "Trooper Thornton merely recorded on the diagram the various marks that appeared on the highway when he arrived at the accident scene. He did not record conclusions relative to what the marks were or what caused them."

The law with regard to the admissibility of police accident reports is that they are not admissible where they contain hearsay or conclusions of the officer preparing the report but are generally admissible absent these evils. *Smith v. Estate of Hall*, 215 Kan. 262, Syl. ¶ 1; *McElhaney v. Rouse*, 197 Kan. 136, 142-144, 415 P.2d 241 (1966); *McGrath v. Mance*, 194 Kan. 640, Syl. ¶ 1, 400 P.2d 1013 (1965); *Morlan v. Smith*, 191 Kan. 218, 380 P.2d 312 (1963); *Allen v. Ellis*, 191 Kan. 311, 380 P.2d 408 (1963).

Appellants' argument that the diagram contains conclusions of the officer and hearsay is not convincing. The diagram was prepared by the officer from measurements made by him at the scene before the truck had been moved and before any change could have occurred in the physical facts. The notations placed by him on the diagram were: "truck lying left side down," "wheel marks by right wheels. dual's on rear," "Reflector Post," and "Mile Post 219 broken off." These appear to reflect physical facts which the officer viewed at the scene. They were not objectionable for the reasons given.

In determining the admissibility of such hearsay evidence under the facts of this case there are two principles which generally should receive primary consideration. These are necessity and probability of trustworthiness. In the present case, if the information perceived by Officer Thornton at the scene is to be available at a trial it must come from his official report. His death rendered him unavailable as a witness. When we consider the probability of trustworthiness we find that Officer Thornton's immediate supervisor authenticated the report and testified to the other requirements of the statute. The supervisor identified the diagram as being the one prepared by Officer Thornton in the regular course of his official duties on the date the accident occurred, and after he had been at the scene of the accident. The

trial judge quite properly ruled that the requirements of the statute had been met.

Accordingly we hold a diagram of an accident scene prepared by an officer as part of an official report in the regular course of his duties may be admitted in evidence pursuant to the requirements of K.S.A. 60-460(*d*)(3) if the officer is unavailable as a witness at a subsequent trial. However, not only the requirements of 60-460(*d*)(3) must be satisfied but also the diagram must be sponsored by a proper witness who can authenticate it as genuinely the work of the unavailable officer done in the regular course of his duties. The diagram properly was admitted in evidence in this case.

Appellants next contend the court's instructions were confusing and that the court erroneously commingled instructions pertaining to the theory of negligence of the manufacturer with those on implied warranty of fitness and merchantability. They further contend the court erred in failing to instruct the jury that care in manufacturing and testing is not a defense to a breach of an implied warranty of fitness and merchantability. We note in the petition and in the pretrial order plaintiffs allege and urge both theories of recovery as bases for their claim. In the pretrial order plaintiffs assert that General Motors Corporation was negligent (1) in failing to test and inspect the hose, (2) in failing to discover and replace the defective hose prior to delivery, (3) in equipping the vehicle with a hose which was soluble in the fluid, and (4) in negligently designing the power assist system.

The plaintiffs further urged that the manufacturer had breached an implied warranty of fitness by delivering the truck with a defective steering mechanism.

The court in instructing the jury on the negligence feature of the case gave Instruction No. 5 which reads as follows:

"One of the theories upon which plaintiffs seek recovery in this case is their claim that the General Motors Corporation was negligent in the manufacture of the truck.

"Negligence is the lack of ordinary care under the existing circumstances. As applied to the manufacture, testing and sale of a product, it means the failure of a manufacturer or seller to do something that a reasonably careful manufacturer or seller would do, or the doing of something by a manufacturer or seller that a reasonably careful manufacturer or seller would not do, as disclosed by the evidence in this case. The degree of care must be equal to the danger reasonably to be anticipated, when measured by all the facts and circumstances.

"Manufacturers and sellers are not insurers of the safety of persons in the use of the product."

This instruction is substantially the same as PIK Civ. 2d 13.01 (1978). The last sentence, to which plaintiffs object, is added but does not change the meaning of the prior part of the instruction. The last sentence is a correct statement of Kansas law in products liability cases whether they are based on breach of implied warranty (*Robbins v. Alberto-Culver Co.*, 210 Kan. 147, 499 P.2d 1080 [1972]) or negligence (*Garst v. General Motors Corporation*, 207 Kan. 2, 484 P.2d 47 [1971]). We see no prejudice to plaintiffs in this instruction.

In instructing the jury on the theory of implied warranty of fitness the court gave Instruction No. 7 as follows:

"A manufacturer selling a motor vehicle for use as such impliedly warrants that it is reasonably fit for such purpose.

"A manufacturer who breaches this warranty is liable to a person who sustains injury as a result."

This instruction was approved by both parties and was given in the exact form set forth in PIK Civ. 2d 13.13 (1978). In one of the prior instructions the court had advised the jury that in order for plaintiffs to meet their burden of proof on either or both theories they must prove and the jury must find (1) that the left turn hose was defective, (2) that the defect in the hose existed at the time the hose left the control of the defendant, and (3) that the defect in the hose was the proximate cause of the plaintiffs' injuries. In addition the jury was advised that contributory negligence of plaintiff Adnan Timsah, in the operation of his vehicle, if any, was not a defense to plaintiffs' claims based upon breach of warranty.

Appellants quarrel with the wording and applicability of these and other instructions given by the court. In their arguments they do not contend the instructions erroneously state the law. The arguments largely are concerned with a confusion they discern from considering instructions on the theory of manufacturer's negligence when such instructions are not and should not be applied when considering the theory of breach of an implied warranty of fitness. The appellants had a right to base their claim on both theories even though the duplication did complicate the job of instructing the jury. The instructions do not appear to this court to be unduly complicated or confusing.

Among the general principles to be applied on appeal in determining whether or not instructions of the trial court are in error

are those set forth in *Bechard v. Concrete Mix & Construction Inc.*, 218 Kan. 597, 600, 601, 545 P.2d 334 (1976). We find four of the principles listed in *Bechard* to be of particular interest in our present case. These are:

"(6) Instructions should be general in nature insofar as possible, and should not be argumentative or unduly emphasize one particular phase of the case. Stated in another way, jury arguments should be left to the summations of counsel. . . .

"(7) A court should not single out a particular theory or circumstance and give it undue emphasis although the requested instruction correctly states the law. . . .

"(8) Instructions are to be considered together and read as a whole, without isolating any one instruction. . . .

"(9) If jury instructions properly and fairly state the law as applied to the facts in the case when considered as a whole, and if the jury could not reasonably be misled by them, the instructions should be approved on appeal." 218 Kan. at 601.

Accordingly we hold the instructions given do not justify reversal. The jury could not reasonably be misled by them.

Appellants contend it was error to permit evidence of testing procedures used for quality control of the high pressure power steering hoses used on this model truck. Such testimony was not relevant on implied warranty, but in the pretrial order defendant was charged with negligence "[i]n failing to test and inspect the power steering hose prior to its installation in the 1972 GMC two-ton truck." The evidence was proper to defend against the negligence theory raised by plaintiffs.

It is next argued that defendant's attorney committed reversible error in the opening argument when he stated this was the first claim lodged against GMC on the basis of a rupture of this particular kind of steering hose. He stated that 420,000 of these hoses had been manufactured and placed in use. When this statement was made appellants' counsel objected. The court then admonished the jury to consider only that testimony which comes from witnesses, and the statements and arguments of counsel are not evidence and should not be considered as such. Later during the trial, the court excluded this evidence.

Generally speaking, in an opening statement to the jury statements by counsel that certain evidence will be introduced are proper if made in good faith and with reasonable grounds to believe that the evidence is admissible, even though the intended proof referred to is afterward excluded. *Miller v. Braun,* 196 Kan. 313, Syl. ¶ 1, 411 P.2d 621 (1966). Thus, the question in this

appeal is not whether evidence of no prior complaints was admissible in the action, but rather whether counsel's reference to such evidence was made in a good faith belief it would be admitted at the trial. Good faith would seem to be clearly present here. Defendant had legal authority for the admissibility of such evidence. In 29 Am. Jur. 2d, Evidence § 310, p. 356, it is said:

"Although there are some holdings to the contrary, evidence of the absence of previous accidents at the same place where the plaintiff was injured, or of the absence of prior injuries arising from the use or operation of the appliance whereby the plaintiff was injured, has generally been held admissible as tending to show that the place or appliance was not dangerous  . . . ."

Although we do not need to decide the admissibility question here there are Kansas cases which to some degree support admissibility of evidence to prove absence of complaints. *Cook v. Railway and Bridge Co.,* 101 Kan. 103, 107-108, 165 Pac. 803 (1917); *Field v. Davis,* 27 Kan. 400 (1882). Under the circumstances here the statements appear to have been made in good faith and with reasonable grounds to believe the evidence would be admitted at the trial. There was no error committed.

Additional complaint is made that counsel for defendant improperly commented in his opening statement on deposition testimony of Adnan Timsah, one of the parties. K.S.A. 1974 Supp. 60-232(a)(2) indicates that the deposition of a party may be used by an adverse party for any purpose. It was used in this case to cross-examine Timsah, a party in the case. This court held in *Service Oil Co., Inc. v. White,* 218 Kan. 87, Syl. ¶ 8, 542 P.2d 652 (1975), that:

"K.S.A. 1974 Supp. 60-232(a)(2) specifically authorizes the use by an adverse party, for any purpose, of a deposition of a party, without regard to the limitations applicable generally to the deposition of witnesses offered by either party."

The question of what comments are proper in an opening statement rests largely within the discretion of the district court. *Miller v. Braun,* 196 Kan. at 317. Plaintiff has not shown how he was prejudiced by the comments on the deposition testimony and no abuse of discretion by the trial court is shown.

It is argued the court erred in permitting improper cross-examination of appellants' expert witnesses by permitting the use of hypothetical questions. It is a long standing rule in this state that hypothetical questions are a proper method of cross-examination of an expert witness. *State v. Buck,* 88 Kan. 114, 127 Pac. 631

(1912). A party may propose a hypothetical question, not only for the purpose of bringing out the party's theory respecting the matter, but also to develop an answer against the theory of the opposite party. *State v. Olthoff,* 141 Kan. 70, 84, 40 P.2d 384 (1935). Great latitude is necessarily indulged in the cross-examination of an expert witness in order that the intelligence and powers of discernment of the witness, as well as his capacity to form a correct judgment, may be submitted to the jury so it may have an opportunity for determining the value of his testimony. *Bourgeois v. State Highway Commission,* 179 Kan. 30, 34, 292 P.2d 683 (1956). Indeed, "[t]he latitude permitted in the cross-examination of an expert witness is even wider than in the case of an ordinary opinion witness." *Bott v. Wendler,* 203 Kan. 212, 228, 453 P.2d 100 (1969). Of course, it is the general rule that the scope of cross-examination in a particular instance rests within the discretion of the trial court. *Rostine v. City of Hutchinson,* 219 Kan. 320, 329, 548 P.2d 756 (1976).

The appellants' experts testified the hose had the defects when manufactured. Their opinion seems to have been based on the appearance of the hose as they viewed it after the accident. It was, therefore, appropriate to question these experts on other possible causes of the apparent defects. There was no error in permitting such questions.

The final contention of appellants is that the court erred in refusing to permit them to conduct an in-court experiment to establish whether the hydraulic reservoir, a component of the steering system, would retain fluid when turned upside down. As previously stated the truck turned over and remained on its side for some time. Witnesses testified the reservoir still contained hydraulic fluid. Appellants offered to fill the reservoir with water, place the cap thereon and turn the reservoir on its side in the presence of the jury. The defendant objected to the experiment because there was no offer of proof that the conditions involved in the proposed experiment would be similar to the conditions which were present at the time of the accident. The relevance of demonstrations or tests to be performed in the presence of the jury rests in the sound discretion of the trial court and its decision on the matter will not be reversed on appeal unless an abuse of discretion is apparent. *State v. Morton,* 217 Kan. 642, 644, 538 P.2d 675 (1975).

Judgment affirmed.

HOLMES, J. dissenting. I respectfully dissent. In my opinion, the admission of the officer's diagram without an explanation of the markings contained thereon was clearly erroneous and prejudicial to the plaintiffs. As the majority concedes, the admission of the diagram was highly important to the defense. It was essential to establish the defendant's theory and to disprove plaintiffs'.

The diagram in question would appear to show the route of the plaintiffs' truck from a point where it apparently ran off the shoulder on the east edge of the northbound lanes until it ended up on its left side across the highway on the shoulder along the west edge of the southbound lanes. The markings first show two straight lines proceeding north and east of the shoulder. These two lines are designated "wheel marks by right wheels" and extend for a distance of what appears to be about 200 feet before turning back towards the left and the highway. At the point where these two parallel lines approach the right-hand edge of the shoulder they become one solid black line considerably wider and heavier than the lines designated as having been made by the right wheels. The solid black line then proceeds to the east line of the inside northbound lane where it stops. A new line begins again further north, proceeds across the inside northbound lane, across the median strip to the west edge thereof. At that point there is a definite break in the line shown on the diagram and it does not reoccur until the middle of the inside southbound lane where a much lighter and finer line picks up going nearly straight north for another fifty feet or so until it forms a loop and then proceeds on to the final resting point of the vehicle. It is not clear whether the loop indicates the truck turned over, spun around, or what was intended. The various markings, which apparently were an attempt to chart the course of the ill-fated vehicle, cover some 510 feet from south to north although the diagram itself is not drawn to scale. There is no explanation of the different types of markings or lines tracing the path of the vehicle. The first lines, indicated as being from the right wheels of the truck, are definitely different from those shown on the right-hand portion of the highway, which are in turn different from those shown in the median and southbound lanes of the highway. In all, there are what appear to be four different types of markings used by the officer to chart the travel of the vehicle. Without the officer's

testimony, it is impossible to determine whether they indicate skid marks, scuff marks, mud tracks, a trail of oil, power steering fluid, or merely the officer's opinion of the path of travel. The diagram also indicates a broken mile post near the point where the markings first indicate the vehicle went off the shoulder. While it is the theory of the defense that plaintiff went off the road, struck the mile post, which in breaking punctured and ruptured the power steering hose, this is purely conjecture based upon the unexplained diagram. There was no testimony from the patrolman's supervisor or any other official of the highway patrol that there is a uniform method of preparing accident forms which might shed some light upon the meaning or interpretation of the various markings and monuments shown on the diagram.

In my opinion, this case falls squarely within the rule we set forth in *Sulkis v. Zane,* 208 Kan. 800, 494 P.2d 1233 (1972):

"Generally, a diagram illustrating the scene of an accident and the relative location of objects, if proved to be correct, is admissible in evidence to enable the jury to understand and apply the established facts to the particular case. (8 Am. Jur. 2d, Automobiles and Highway Traffic, § 977, p. 528.) However, where marks or notations, the import of which is not clear, appear upon a map or diagram and the person who made them is not produced as a witness, the map or diagram containing such marks is inadmissible. (29 Am. Jur. 2d, Evidence, § 784, pp. 854, 855.)" p. 803.

K.S.A. 60-460(*d*)(3) provides an exception to the hearsay rule based upon necessity and the unavailability of the witness whose hearsay statement is sought to be introduced in evidence. I have no quarrel with the majority's analysis of the statute itself and its general application. Where we differ is in the majority's finding that the diagram contains no conclusions of the officer but merely reflects physical facts as he found them. What physical facts are reflected? If all of the markings, monuments and entries on the diagram were clearly described, I might agree but, unfortunately, they are not. There is absolutely no way to determine what the officer was attempting to portray in his diagram and the rule of *Sulkis* should apply.

In commenting upon K.S.A. 60-460(*d*)(3), it has been said:

"Clause (3) is drafted so as to indicate an attitude of reluctance and require most careful scrutiny in admitting hearsay statements under its provisions." 4 K.S.A. Code of Civ. Proc. 437 (1965).

It is not necessary to comment upon plaintiffs' other points and, in my opinion, the decision of the trial court should be reversed and the case remanded for a new trial.