No. 47,317

JACK R. MASSONI and MARY JANE MASSONI, CELIA MASSONI, by JACK R. MASSONI, as Parent and Natural Guardian, and JACK R. MASSONI and MARY JANE MASSONI, Heirs of Melissa Massoni, Deceased, *Appellants,* v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, TIME-D. C., INC., and LIBERTY MUTUAL INSURANCE COMPANY, *Appellees.*

(522 P. 2d 973)

Opinion filed May 11, 1974.

*Gene H. Sharp,* of Liberal, argued the cause, and *Kerry McQueen,* of Liberal, was with him on the brief for the appellants.

B. G. *Larson*, of Dodge City, argued the cause and was on the brief for the appelles Time-D. C., Inc., and Liberty Mutual Insurance Company.

*Paul A. Wolf*, of Hugoton, argued the cause, and *Paul W. Clark* of Topeka, was with him on the brief for the appellee state highway commission.

The opinion of the court was delivered by

HARMAN, C.: This is an action for damages for wrongful death, personal injury and property loss arising out of a head-on collision between two passenger motor vehicles. Defendants in the action are the owner of a truck-trailer, its public liability carrier and the state highway commission. Plaintiffs sought recovery on the theory the combined negligence of the truck driver and of the driver of the vehicle with which plaintiff's vehicle collided plus statutory defects in the highway caused the collision. The case was tried to a jury which returned a general verdict for the defendants and plaintiffs have appealed.

We first summarize the background facts revealed at trial.

The collision occurred September 20, 1969, on U. S. highway 54 approximately 14.6 miles northeast of Liberal. About one and one-half miles west of the area where the collision occurred the highway crosses the Cimarron river. From the river bridge northeastward the highway went upgrade and contained three marked lanes—two lanes for eastbound traffic separated by white stripes or dashes, and one for westbound traffic. The right hand lane for eastbound traffic, called a creeper or climbing lane, was for use of trucks and heavy vehicles ascending the hill. A double yellow line on the highway divided the eastbound from the westbound traffic in the area involved. The speed limit was seventy miles per hour. As eastbound traffic reached the crest of the hill and entered the transition lane the highway curved slightly to the right. Various highway department signs were posted along the right side of the highway for eastbound traffic. A short distance northeast of the road turning off to the Meade county state lake there was a pavement width transition sign which indicated a narrowing of the right side of the roadway. This sign was about 750 feet in advance of the actual transition in the road. Beyond this sign to the east there was a sign upon which the legend "MERGING TRAFFIC" appeared. Next there appeared a curve sign indicating a curve to the right. Then in the transition area where the collision occurred there were five W 16 vertical panels

delineating the tapered area of the roadway where the two east-bound lanes merged into one.

At about 9:30 a. m. on the day in question Celia J. Massoni was operating a Mercury automobile in a southwesterly direction toward Liberal at a point on the crest of the aforementioned hill on U. S. highway 54. She was accompanied by her sister, Melissa M. Massoni, and a friend, Vicki Hinz. Celia and Melissa were minor daughters of plaintiffs Jack R. Massoni and Mary Jane Massoni. Plaintiff Jack R. Massoni owned the Mercury automobile. An automobile driven by a Mr. Olsen was behind the Massoni vehicle, traveling in the same direction, and behind the Olsen vehicle a Mr. Hinman was driving his automobile with his wife as a passenger, also headed toward Liberal.

At the same time a truck-trailer rig, sixty feet in length and eight feet wide, owned by defendant Time-D. C., Inc., was proceeding northeasterly up the grade in the creeper lane. Behind the truck and also proceeding in a northeasterly direction was a Dodge automobile owned and being driven by Jerry C. Dean. Dean was accompanied by Jerome McHenry. McHenry was asleep until awakened by Dean's frantic voice just before the collision saying, "Where is this guy going?" or something similar. As the truck was approaching and entering the unmarked transition lane without any left turn signal being made, Dean was seen to pull out to his left, apparently in an effort to go around the left side of the truck. As he was either at about the midpoint of the truck-trailer rig or at the rear, he collided almost head-on with the Massoni vehicle. The Dean car laid down forty-two feet of skid-marks to the point where it crossed the double yellow center lines, then thirty-two feet more of skidmarks up the roadway, then there were no skidmarks for a distance of twenty-two feet to the point of impact. The point of impact was three feet south of the north edge of the roadway or at the extreme right hand side of the Massoni lane of traffic, and was 280 feet east of the last of the white stripes marking the end of the creeper lane. After the Dean-Massoni collision the Olsen vehicle swerved and missed the Massoni car but slid into the Dean vehicle. Dean and Melissa Massoni were killed as a result of the collision. Celia Massoni was seriously injured and burned and we are told has no memory of the collision. The roadway where the collision occurred was about twenty-nine feet wide. The width of the two-lane roadway was twenty-four or twenty-five feet.

Other evidence and events occurring at trial will be related in connection with the matters raised on appeal; however, at this point it may be well to mention the basis of the claims asserted by plaintiffs against the defendant highway commission. Plaintiffs contended the highway was defective in that traffic control signs were not maintained in accord with the uniform sign manual adopted by the commission and also that it was defective in design. Highly summarized, plaintiffs asserted the curve sign was placed too close to the curve—it should have been from 500 to 600 feet further back to give adequate warning; the pavement width transition sign should have been set further west another 750 feet in advance of the hazard—also a duplicate sign should have been placed on the left side of the roadway to enable an eastbound driver to see it at a time when the view on the right might be blocked by a vehicle in the creeper lane; the merging sign was inappropriate and likely to cause driver confusion; the transition lane, 400 to 425 feet in length, was too short—it should have been from 600 to 840 feet long; and a creeper lane should not end at the beginning of a curve in the highway toward the right.

Although we are not here called upon to determine whether the evidence was sufficient to show that the highway was defective, mention should also be made of the fact that evidence pro and con was received on that issue. Plaintiffs' experts testified the signs and design mentioned did not conform to manual and bluebook requirements and that maintenance of the highway constituted a hazardous and dangerous condition—the highway commission produced experts who testified to the contrary.

Plaintiff-appellants assert several trial errors. We shall first consider two which in the unanimous opinion of the court constitute reversible error requiring new trial, although the court is divided as to the reasons.

Shortly after the collision a highway patrolman, Trooper Schlegel, who had had six years' experience in investigating highway accidents, went to the scene, conducted an investigation and made a report. Called as a witness by appellants, he testified as to the facts ascertained by him. Upon cross-examination by counsel for the truck company, the following occurred:

"Question: Now, Trooper, in your findings, as the result of this accident, I believe you listed only one contributing circumstance to the accident. Is that correct?

"MR. SHARP: We are going to object to the form of the question. It is

invading the province of the jury and calling for the opinion of the witness.

"THE COURT: Rephrase your question please.

"MR. LARSON: All right.

"Question: (By Mr. Larson) What did you find, if anything, to have been the contributing circumstance to this accident?

"MR. SHARP: We are going to object to the form of the question as calling for the opinion and conclusion of the witness.

"THE COURT: He is qualified as an expert. I will permit the question.

"Answer: (By the Witness) The cause of the accident listed on my report was improper overtaking on the vehicle number 2.

"Question: Who does that refer to?

"Answer: Vehicle number 2.

"Question: Was that Dean?

"Answer: The Dean vehicle."

Appellants assert error in several respects in the reception of the foregoing evidence. We think the matter is controlled by two separate rules expressed in *Ziegler v. Crofoot,* 213 Kan. 480, 516 P. 2d 954, which decision had not yet been rendered at the time of the trial of this case. *Ziegler's* posture was similar to that at bar. Upon cross-examination of a highway patrolman who had investigated the intersection collision in question, he was permitted to testify, over objection, that in his written report under the column "Contributing Circumstances" he showed that the plaintiff driver failed to yield the right of way; on the part of the defendant driver he indicated "None". Jury verdict and judgment were for the latter. On appeal plaintiff challenged admission of this testimony urging, among other things, as here, "that said testimony usurped the province of the jury by stating ultimate facts which should have been reserved for the jury's final determination". (p. 483.) In affirming the judgment by a divided court it was pointed out that under K. S. A. 60-456 (d) expert testimony in the form of opinions otherwise admissible is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact. We said this of the testimony, which was held to be admissible:

"In the case under consideration the opinions requested and given were directed to the actions of the parties, if any, which contributed to cause the accident. We believe the opinion of the expert on this subject would assist the jury in understanding and summarizing the material in the evidence and it was not objectionable.

. . . . . . . . . . . . . .

". . . The question merely called for the patrolman's conclusion as to what actions of the parties, if any, contributed to the accident. The jury was

free to make the ultimate decisions as to fault, negligence or contributory negligence. In an intersection accident if all the requirements of K. S. A. 60-456 are otherwise met an expert may be permitted to give his opinion as to actions and circumstances of the parties, if any, which contributed to the accident." (pp. 487-488.)

However, in *Ziegler* we referred approvingly to certain language used in *Frase v. Henry*, 444 F. 2d 1228 (CA 10, 1971) wherein the federal court of appeals for this circuit examined Kansas statutes pertaining to evidence and cautioned that there still exists assurances against admission of opinions which merely tell the jury what result to reach, stating that opinions are admissible only up to a point where an expression of opinion would require the expert to pass on the weight or credibility of the evidence. In *Ziegler* we also said:

"This court feels that to permit an expert to give his opinion on *who was at fault* in causing an accident is objectionable and should not be permitted." (p. 487.)

We there concluded the form of the questions and the patrolman's answers were not subject to the foregoing objection. Thus it will be seen a narrow distinction has been drawn in determining admissibility of this type of opinion evidence. The rules stated are that an expert witness may give an opinion as to what actions of the parties, if any, contributed to the collision but he may not give an opinion as to who was at fault in causing the collision.

In the case at bar a majority of the court is of opinion the answer of the highway patrolman (that the cause of the accident was improper overtaking on the part of Dean vehicle, which answer was not directly responsive to the question) falls within the category said in *Ziegler* to be objectionable and constitutes reversible error.

Another majority of the court (necessarily with some overlapping) is of opinion the testimony presently under challenge was improperly received for another reason, rooted in K. S. A. 60-456 (*b*), also mentioned in *Ziegler* and stated as follows:

". . . [O]pinion testimony is not without limitations and although an expert witness may be permitted to give an opinion bearing on the ultimate issue he may do so only insofar as the opinion will aid the jury in the interpretation of technical facts or when it will assist the jury in understanding the material in evidence. (*Staudinger v. Sooner Pipe & Supply Corporation*, [208 Kan. 100, 490 P. 2d 619] Syl. ¶ 6.)" (pp. 486-487.)

K. S. A. 60-456 (*b*) provides:

"If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds

are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) *within the scope of the special knowledge, skill, experience or training possessed by the witness."* (Our emphasis.)

In *Gardner v. Pereboom,* 197 Kan. 188, 416 P. 2d 67, we considered the foregoing and stated:

"Where the normal experience and qualifications of laymen jurors permit them to draw proper conclusions from given facts and circumstances, expert conclusions or opinions to be drawn from the facts and circumstances are inadmissible." (Syl. ¶ 7.)

The matter is elaborated in Jones on Evidence (Sixth Edition, Gard) § 14:28 thus:

"Although an expert witness may not usurp the jury function of weighing the evidence and deciding what the facts are, the question of arriving at a reasonable factual conclusion from the evidence which is believed is quite another matter. This, to, is a jury function, but in technical or other matters requiring special knowledge, skill, experience, and the like, the jury or the judge trying the case may be quite at sea without the aid of those who understand the mysteries better than they of little or no experince in such matters.

"If it may be said that there still exists a general rule to the effect that a witness may not express his opinion upon an ultimate issue of fact, it is obvious that the extensive relaxation of the rule turns it into what amounts to an expression by the courts of reluctance or reserve in the receipt of even expert opinion which would seem to substitute the witness for the jury or the judge in the final decision. On this basis what would seem to be confusion and conflict may be looked upon as reflecting a trend toward a common sense and not an abitrary view. This common sense view is to receive the opinion testimony where it appears that the trier of the fact would be assisted rather than impeded in the solution of the ultimate problem." (p. 660.)

The rule was discussed in *Smith v. Lockheed Propulsion Co.,* 247 Cal. App. 2d 774, 56 Cal. Rptr. 128, 29 ALR 3d 538, as follows:

"The crucial consideration in determining whether expert testimony should be received is whether '. . . the subject of the inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.'" (p. 783.)

In the case at bar there were five eyewitnesses to the collision who testified: The truck driver; McHenry, passenger in the Dean automobile; Hinz, passenger in the Massoni vehicle; and Mr. and Mrs. Hinman who were following the Olsen and Massoni vehicles. Testimony respecting the positions of the vehicles involved and estimates

of their speed was received. The highway patrolman testified at length concerning his observation and investigation at the scene shortly after the collision. Diagrams, charts and aerial photographs depicting the scene and establishing pertinent measurements were presented to the jury. As indicated, experts testified pro and con and fully aired their views as to the propriety of the signing and design of the highway. Although the experts differed as to their conclusions and opinions, the signs and road conditions were such as are encountered by and within the experience of persons everywhere and there was little difference or dispute arising from the other testimony as to just what happened.

This other majority of the court is of the opinion that the matters at issue were not sufficiently beyond the common knowledge of ordinary persons that the opinion of an expert would be helpful to the jury. The case was not of a complicated or technical nature. In other words the situation was one where the normal experience and qualifications of laymen jurors would have enabled them to draw proper conclusions without the aid of expert conclusions or opinions. In such a situation expert testimony is inadmissible (*Gardner v. Pereboom,* supra).

The conclusions just reached dispose as well of the allegation of error in the receipt of testimony of a witness called by both appellees, George W. Forman. Upon his direct examination the following occurred:

"Question: All right. Based upon your investigation, your reconstruction, and all of the information available to you, do you have an opinion as to the cause of this accident on September 20, 1969?

"Answer: Yes, I have.

"Question: And would you state that opinion to the Jury, please?

"MR. SHARP: To which we are going to object, Your Honor, as insufficient foundation, calling for an opinion and conclusion of the Witness which invades the province of the Jury.

"THE COURT: Overruled.

"Answer: (By Witness) I am of the opinion that the proximate cause of this accident was an improper overtaking action on the part of the driver of the Dodge automobile, Mr. Jerry Dean. He was proceeding at a speed which in all probability was unreasonable, was excessive, and attempted to overtake improperly at the end of a clearly marked merging of the creeper lane to the normal two lane highway."

Receipt of this testimony must be held to be erroneous in the same fashion as that of the highway patrolman.

Complaint is also made of the trial court's refusal to admit

expert testimony offered by appellants respecting causation of the collision in question. The witness, Bob L. Smith, professor at Kansas State University, who had had extensive training, study and experience in the field of highway design and signing, testified at length, without objection, that the signing and design of the highway did not conform to manual and good design requirements, and that these defaults rendered the highway dangerous to traffic and could contribute to an accident. The trial court then sustained objections to further questions by appellants as to the cause of the collision on the basis the witness was not an accident reconstructionist. We think this testimony is likewise objectionable under the rules stated in *Ziegler*, rather than for the reason given by the trial court.

Since new trial is being directed mention should be made of further points raised by appellants. They complain of the fact each appellee was allowed three peremptory challenges to the jury while appellants were limited to a total of three. K. S. A. 1973 Supp. 60-247 provides in pertinent part:

"(b) *Challenges.* In civil cases, each party shall be entitled to three (3) peremptory challenges. . . . Several defendants or several plaintiffs shall be considered as a single party for the purposes of making challenges. If there is more than one defendant and if the judge finds there is a good faith controversy existing between the defendants, the court shall allow the defendants additional peremptory challenges and permit them to be exercised separately or jointly."

The crux of the matter is whether a finding by the trial court that a good faith controversy existed between the defendants was justified. We think it was. In their petition appellants alleged that the combined acts of both appellees caused their damage. In their answers both appellees denied these allegations. The highway commission additionally responded that appellants' damage was caused either by the neglect of Dean or that of the truck driver. The record on appeal does not contain any pretrial order further refining the issues nor does it contain the instructions to the jury. Upon this state of the record it would appear that the interests of appellees were at least adverse in part and a good faith controversy between them existed. Appellants have not demonstrated otherwise. The situation is akin to that in *Lehar v. Rogers,* 208 Kan. 831, 494 P. 2d 1124. There the plaintiff driver sued the city of Wichita for negligent maintenance of a traffic control device and another driver of an automobile involved in a collision with plaintiff.

The defendant driver pleaded in the alternative that plaintiff's damages were caused by negligence of parties other than defendant. The two defendants were each allowed three peremptory challenges. Upon plaintiff's appeal this court stated:

". . . With the case in this posture, at the time of impaneling the jury, the trial court could well have found a good faith controversy between the City and defendant Rogers on the issue of proximate cause. The trial court did not make an express finding that a controversy existed between defendants but plaintiffs made no objection on this ground. . . . We find no error shown with respect to the trial court's handling of the peremptory challenges." (pp. 837-838.)

Appellants make complaint of certain statements by counsel for the highway commission in his opening statement to the jury. The statements had to do with the manner in which Jerry C. Dean drove his vehicle at the time of the collision and the fact his estate was not being sued in the action. They were made after counsel for appellants had told the jury they expected that appellees would try to lay all the blame for the accident upon Dean. Aside from the argumentative aspect of the statements challenged we see nothing wrong with them.

Finally, appellants complain of language used by counsel for the highway commission in his closing argument to the jury. Counsel obliquely referred to the fact the jurors were taxpayers and public funds would be used to pay any judgment which might be rendered against the state. No objection was voiced at the time the statements were made and nothing further was said to the jury about the matter.

Unprovoked argument directing jurors' attention to the fact that any judgment rendered will be paid from tax funds constitutes an improper appeal to the self-interest of the jurors (see anno. 33 ALR 2d 442) and if not effectively corrected, may be held to be prejudicial error requiring reversal or new trial. The statements complained of here were improper but we need not assess their prejudicial impact in view of the fact new trial is being ordered for erroneous admission of evidence.

The judgment is reversed and the cause remanded with directions to grant appellants' motion for new trial.

APPROVED BY THE COURT.

FONTRON, J., concurs in the result.

OWSLEY, J.: Concurring and dissenting in part. Although I con-

cur in the conclusion in this case I respectfully dissent from the rule of law stated in Syllabus ¶ 2. I am unable to draw any meaningful distinction between "contributed" to a collision and "caused" a collision with relation to testimony of a witness. A question posed as to what "contributed" to an accident, or the alternative, what "caused" an accident, calls for an identical answer. To expect a witness to distinguish between these words is ridiculous. The bench and bar of this state have used these words interchangeably for many years. To now decide the words are distinguishable is an improper use of judicial power.

I also dissent from Syllabus ¶ 5 of the opinion. This syllabus states that where the interests of multiple defendants are adverse to one another so that a good faith controversy exists among them, each such defendant is entitled to three peremptory challenges to the jury. The basis for this rule of law depends on an interpretation of K. S. A. 1973 Supp. 60-247, which provides:

"(b) *Challenges.* In civil cases, each party shall be entitled to three (3) peremptory challenges. . . . Several defendants or several plaintiffs shall be considered as a single party for the purposes of making challenges. If there is more than one defendant and if the judge finds there is a good faith controversy existing between the defendants, the court shall allow the defendants additional peremptory challenges and permit them to be exercised separately or jointly."

As I read this statute each party to a lawsuit is entitled to three peremptory challenges. It is only when there is a good faith controversy between multiple defendants that the court can allow the defendants additional peremptory challenges. I see nothing in the statute which provides that each of the defendants under these circumstances is entitled to three peremptory challenges. I construe the statute to permit the court to allow additional peremptory challenges, and that the number of additional peremptory challenges and whether they be exercised separately or jointly is discretionary. Whatever the action of the trial court may be this court can only review such action on the basis of whether the trial court's action resulted in an abuse of discretion. I approve the granting of three additional peremptory challenges in this case, but I cannot do so on the basis the statute makes it mandatory to grant three additional peremptory challenges when a good faith controversy exists.

PRAGER, J., joins in the foregoing concurring and dissenting opinion.