No. 47,200

QUENTIN E. SMITH, *Appellee*, v. The Estate of Vernon O. Hall, Deceased, *Appellant*.

(524 P. 2d 684)

Opinion filed July 17, 1974.

*Harold E. Doherty*, of Topeka, argued the cause, and *Darrell E. Miller* and *Mortimer A. Berlin*, also of Topeka, were with him on the brief for the appellant.

*Richard D. Heeney*, of Galloway, Wiegers, Sprouse and Heeney, of Marysville, argued the cause, and *Robert F. Galloway*, of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This personal injury action arises out of a motorcycle-automobile collision which occurred at an intersection in the city of

Marysville, Kansas, on September 1, 1967. Plaintiff Quentin F. Smith, a high school student, was riding the motorcycle. Vernon O. Hall, driver of the automobile, died of independent causes in 1969, at the age of 65, and this action was initiated in 1970 as a claim against his estate. The matter was transferred to the district court, where a jury returned a plaintiff's verdict for $50,985. Hall's administratrix appeals.

The intersection was that of Broadway, a 67 foot east-west thoroughfare, and Fifth Street, a 30 foot north-south street. Plaintiff was riding his motorcycle west on Broadway at a speed estimated by him to be 17 miles per hour. Hall was going north on Fifth at a speed estimated by a bystander at 25 to 30 m. p. h. The collision occurred in the northeast quadrant of the intersection, indicating that Hall had crossed some 35 feet of Broadway from south to north, while plaintiff had made it into Fifth something less than 15 feet from the east curb.

Appellant contends at the outset that plaintiff was guilty of contributory negligence as a matter of law because, by his own admission, he didn't see the approaching automobile until it was about 10 feet from him and it was too late to avoid the collision. The contention is based on exchanges, such as these, on cross-examination:

"Q. Now if that car was within 150 feet and you looked carefully, you should have seen it, shouldn't you?
"A. I suppose so.

. . . . . . . . . . . . .

"Q. All right, when you were 15, 20 feet from that intersection, if you had looked to the south and seen this automobile, you could have stopped and avoided the accident, couldn't you?
"A. If I had seen it.
"Q. The only reason you didn't see it, you didn't look carefully, wasn't it?
"A. Possibly."

The rules for testing such evidence have been stated countless times. See, *Sims v. Schrepel*, 208 Kan. 527, 492 P. 2d 1312, Syl. ¶¶ 1 & 2; *Hamilton v. Kurth*, 199 Kan. 572, 431 P. 2d 531; *Gardner v. Pereboom*, 197 Kan. 188, 416 P. 2d 67, Syl. ¶ 6; *Deemer v. Reichart*, 195 Kan. 232, 404 P. 2d 174, Syl. ¶ 2. Suffice it to say that in our opinion whether plaintiff's "possible" failure to "look carefully" meant that he failed to maintain the lookout required by ordinary prudence under all the circumstances was a question on which reasonable minds might differ. Indeed, the jury might have found that Hall's speed or his failure to yield the right-of-way was

the sole proximate cause of the accident. Hence, the issue of contributory negligence was a jury question, and the defendant's motions for a directed verdict were properly overruled.

A more substantial issue, and one which a majority of this court thinks calls for reversal, involves the testimony of the investigating officer as to the "contributing factors" to the accident noted on his accident report. Over repeated objections by the defendant Officer Donald Bogart of the Marysville police department was permitted to testify that he had marked on his report (1) that plaintiff's speed was too fast, and (2) that Hall had failed to yield the right of way. The court permitted the testimony after establishing through its own questioning that the report was "an exact copy of a report that has to be sent in and kept as official business records" and that "It is a public record and this is an exact copy."

This was, in itself, an insufficient basis for the admission of the testimony. The "business entry" exception to the hearsay rule (K. S. A. 60-460 [m]) will not permit the admission of documents which are not "records of acts, conditions or events" which are sought to be proven. Here what was sought were the officer's recorded *conclusions*, not his recorded observations as to physical conditions. We have specifically held that police reports are not admissible for that purpose. *McGrath v. Mance*, 194 Kan. 640, 400 P. 2d 1013, Syl. ¶ 1 and cases cited therein. Cf. also, *Pacific Indemnity Co. v. Berge*, 205 Kan. 755, 473 P. 2d 48.

Of course, the report itself was not admitted into evidence but only the officer's testimony as to the conclusions he had recorded. When the eliciting question was objected to as calling for a conclusion, the court responded, "I don't know whether it is or not. *If it is based on hearsay, it would be objectionable.* Oh go ahead, objection overruled. You may answer." (Emphasis supplied.)

Here again we think the court went astray. Whether a vehicle is going "too fast" or whether a driver "failed to yield the right of way" cannot be anything other than a conclusion, calling for the opinion of the person expressing it. Now it may be that Officer Bogart was an expert in accident investigations, and qualified to testify as to his opinion on matters within his expertise. We don't know the answer to that question because no qualifying testimony is in the record and no issue is made of his qualification by either party. But the trial court did put a tentative finger on the problem when it observed that if the opinion was based on hearsay it would be objectionable.

The difficulty is that the judicial finger was then removed and the testimony admitted before it was revealed that the opinion was based *solely* on hearsay. It developed that the *only* basis for the officer's opinion, or "professional judgment," as to contributing circumstances was what plaintiff had told him at the hospital after the accident. Our statute on expert testimony, K. S. A. 60-456 (*b*), specifically excludes an opinion so based:

"If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences *is limited to such opinions* as the judge finds are (1) based on *facts or data perceived by or personally known or made known to the witness at the hearing* and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness." (Emphasis supplied.)

We explicated that section in *Casey v. Phillips Pipeline Co.,* 199 Kan. 538, 431 P. 2d 518, Syl. ¶ 1:

"K. S. A. 60-456 requires that an expert witness base his testimony upon facts personally perceived by or known to him or made known to him at the hearing. 'Perceived' means knowledge acquired through one's own senses . . . and 'made known' refers to facts put in evidence."

The officer's opinion here did not purport to be based either on personal knowledge or on anything introduced into evidence. Hence it was not within the scope of the statute, and was not admissible.

It should be borne in mind that we are dealing with the opinions and conclusions of the officer himself, as reflected in his report. We are not passing on the admissibility of his testimony describing a conversation with the plaintiff. The latter testimony may well have been admissible under an exception to the hearsay rule, either as an admission (K. S. A. 60-460 [*g*]) or, if "stress of a nervous excitement" was shown, as part of the *res gestae* (K. S. A. 60-460 [*d*] [2]). What we are saying is that such hearsay could not be admitted bearing an official imprimatur, *i. e.,* as representing the officer's expert professional judgment as to how the accident happened. To admit an opinion so based would permit the officer to "pass upon the weight or credibility of disputed evidence and thus in effect usurp the province of the jury." (*Atkins v. Bayer,* 204 Kan. 509, 511, 464 P. 2d 233. And see, *Frase v. Henry,* 444 F. 2d 1228, 1231 [10th Cir., 1972]; Jones on Evidence, 6th Ed., § 14:27.)

The plaintiff argues that even if the testimony was erroneously admitted the error was non-prejudicial because the officer's testimony attributed wrongful conduct to both parties. The difficulty

is that plaintiff was alive and able to testify on his own behalf. His speed estimate from the stand was 17 m.p.h., and if he regarded that as "too fast" the jury might well have thought him to be a supercautious motorcyclist. Hall, on the other hand, was dead. He had no way to rebut the officer's conclusion that he had failed to yield the right of way to a motorcycle already in the intersection. The prejudice to the defense under these circumstances far outweighed any possible countervailing prejudice to the plaintiff.

Which brings us to a claim of error which, while perhaps not grounds for reversal, will require attention on a new trial. This involves a statement made the day after the accident by Hall to an employee. It was stipulated that the statement was, in substance, "I was going north when I saw this kid on a motorcycle. I had come almost to a stop when the kid ran into the front of my car. The kid had to swerve to get in front of me and I think he was trying to make a U-turn. I was almost all the way through the intersection when the kid on the motorcycle hit me."

This statement was offered by the defense under the hearsay exception found in K. S. A. 60-460 (*d*):

"A statement (1) which the judge finds was made while the declarant was perceiving the event or condition which the statement narrates, describes or explains, or (2) which the judge finds was made while the declarant was under the stress of a nervous excitement caused by such perception, or (3) if the declarant is unavailable as a witness, a statement narrating, describing or explaining an event or condition which the judge finds was made by the declarant at a time when the matter has been recently perceived by him and while his recollection was clear, and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort:"

The trial court, after analysing the three clauses of the statute, concluded that contemporaneity was an essential element of all three, saying: "Now, 'contemporaneous' means just that. It means at or about the same time." "I conclude that this was not a contemporaneous statement. I think too much time has elapsed for us to say that was contemporaneous. And while frankly—I am stepping out of the court's shoes for a minute—my sympathy would be with a defendant in a situation of this kind, I just feel that the rule of law is such that this court cannot evade it and the court feels that you should not be permitted to offer this testimony."

We think the trial court has missed the thrust of clause (3). Clauses (1) and (2) are codifications of the common law rule of *res gestae*, the first requiring that the statement be strictly contemporaneous with the act described, and the second that it be

made while the declarant was still under the "stress of a nervous excitement" caused by the act described. See generally, Wigmore on Evidence (3rd Ed.), §§ 1747, 1750; Hatcher's Kansas Digest (Rev. Ed.), *Evidence,* § 310.

Clause (3), however, is a newcomer to our law of evidence, designed to meet the occasional "necessity" for using hearsay caused by the unavailability of the declarant to testify in person. See Wigmore, op. cit. supra, § 1420, where the author notes:

"Where the test of cross-examination is *impossible of application,* by reason of the declarant's death or some other cause rendering him now unavailable as a witness on the stand, we are faced with the alternatives of receiving his statements without that test, or of leaving his knowledge altogether unutilized. . . . The mere necessity alone of taking the untested statement, instead of none at all, might not suffice; but if, to this necessity, there is added a situation in which some degree of trustworthiness more than the ordinary can be predicated of the statement, there is reason for admitting it as not merely the best that can be got from that witness, but better than could ordinarily be expected without the test of cross-examination." (Italics in original.)

With particular respect to declarants who are unavailable because of death, the author wrote:

"There was a time, in the early 1800s, when it came near to being settled that a general exception should exist for all statements of deceased persons who had competent knowledge and no apparent interest to deceive; but this tendency was of short duration and was decisively negatived. Nevertheless, such an exception, uniting as it does the essential requirements of an exception to the Hearsay rule . . . commends itself as a just addition to the present sharply defined exceptions, and represents undoubtedly the enlightened policy of the future. . . ." (Id., § 1576.)

He cites a number of statutes, notably those of Connecticut and Massachusetts, which had codified a hearsay exception for statements of deceased persons.

Our own statute reflects a legislative adoption of an even broader version of that "enlightened policy of the future." It renders hearsay statements admissible under prescribed circumstances when the declarant is "unavailable as a witness" for a number of reasons, of which death is only one. See K. S. A. 60-459 (g). And cf. *In re Johnson,* 214 Kan. 780, 522 P. 2d 330.

Here there is no question but that the deceased Hall was "unavailable as a witness," or that his statement was one "narrating, describing or explaining an event or condition." Nor do we suppose the trial judge would have had any problem finding that the morning after the accident would qualify as "a time when the

matter had been recently perceived by him [Hall] and while his recollection was clear." This, it will be noted, is the clause (3) reference to the *time* the statement is made, and is far different than the "contemporaneous" standard of clauses (1) and (2). It would allow for a considerable passage of time, so long as the statement was made at a time when the event could still be reasonably classified as "recent" and the declarant's memory was still unclouded. Hence the trial court should have considered whether Hall's statement met the requirements of clause (3), regardless of the fact that it was not a "contemporaeous" statement.

The next requirement for admissibility is a judicial finding that the statement was made "in good faith prior to the commencement of the action." Here the statement was made almost three years prior to the commencement of the action, and as to good faith the trial judge observed, "I knew Bing Hall for years and had a high regard for him. I have no doubt but what he was telling the truth to the very best of his judgment, but I am persuaded that the law and the rules of evidence are against the defendant on this particular point." It thus appears the trial judge could easily have been persuaded of Hall's "good faith" had he felt free to inquire.

Finally, the statute requires a finding that the declarant had "no incentive to falsify or distort." That, as we see it, would be the chief obstacle to the receipt of Hall's statement. There is in each of us a tendency to put himself in the best possible light, and in those in whom the tendency is strong this may itself furnish an "incentive to falsify or distort." On the other hand, there are those whose first instinct is cry out *"mea culpa."* We are not prepared to say that human nature or self-interest alone gives a participant in an event an incentive to fabrication. We think the presence or absence of such an incentive is a question of fact, to be determined by the trial judge in the light of all the circumstances.

Here, of course, the trial judge made no determination of the question one way or the other because, although he obviously wanted to let the statement in, he erroneously thought he was precluded from doing so because of the time element. On a retrial the issue will be open for investigation.

In view of our disposition of the case other questions raised by the appellant need not be considered. The judgment is reversed and the case is remanded for a new trial in accordance with this opinion.

APPROVED BY THE COURT.

OWSLEY and PRAGER, J. J., concur in the result.

KAUL, J., dissents.