No. 48,717

GEORGE LOLLIS, *Appellant,* v. SUPERIOR SALES COMPANY, INC.,
and STEPHEN P. MANARD, *Appellees.*

(580 P.2d 423)

Opinion
filed June 10, 1978.

*John H. Fields,* of Carson, Fields & Boal, of Kansas City, argued the cause and was on the brief for the appellant.

*Gerald L. Rushfelt,* of Rushfelt, Mueller, Lamar, Druten & Moran, of Prairie Village, argued the cause and was on the brief for the appellees.

*Gene E. Schroer,* of Jones, Schroer, Rice & Bryan, Chartered, of Topeka, was on the *amicus curiae* brief on behalf of the Kansas Trial Lawyers Association.

The opinion of the court was delivered by

PRAGER, J.: This is a review of a decision of the Court of Appeals affirming the district court in an unpublished opinion. The plaintiff-appellant, George Lollis, brought an action to recover damages for personal injuries sustained in a collision which occurred in Kansas City, Kansas, between a motorcycle driven by the plaintiff and a beer truck driven by the defendant-appellee, Stephen P. Manard, and owned by the defendant-appellee, Superior Sales Company, Inc. The sole question presented for determination is whether the trial court erred in permitting a

police officer, who investigated the accident, to testify that his official accident report contained his conclusions that the plaintiff, the driver of the motorcycle, had illegally speeded and followed too closely and that his report did not show any contributing actions on the part of the driver of the beer truck.

The facts in the case are not greatly in dispute and essentially are as follows: On the morning of April 17, 1974, a motorcycle driven by plaintiff Lollis collided with a beer truck driven by defendant Manard. Both Lollis and Manard had been in a grocery store on the southwest corner of 11th and Waverly Streets in Kansas City, Kansas, just prior to the collision. Manard, having completed his deliveries, started the truck engine, turned on his left-turn signal, pulled away from the curb, and proceeded in a southerly direction down 11th Street. Plaintiff Lollis, at approximately the same time, started up his motorcycle which was parked behind the beer truck and proceeded to follow the truck in the same direction. 11th Street is a two-way street, 32 feet in width. The pavement was asphalt and the road surface was dry. The posted speed limit on 11th Street was thirty miles per hour. It is undisputed that the beer truck driven by Manard made a right-hand turn to the west on Greeley Street, a block south of Waverly. Plaintiff's motorcycle collided with the right-rear side of the beer truck. The driver of the truck heard an impact and stopped the truck. Plaintiff and his motorcycle ended up close to the corner of 11th and Greeley near the curb.

The evidence offered by plaintiff Lollis and that of the defendants as to how the collision occurred was in conflict. Plaintiff testified that when the beer truck drove away from the curb it had its left-turn signal on and that the signal was still blinking at a point about halfway down the street toward the corner. Plaintiff, believing that the driver of the beer truck intended to make a left turn, started to pass the beer truck on the right side. At that time, the beer truck was traveling in the middle of the street. There were no parked cars in the area and there were no cars ahead when the plaintiff started past the beer truck. Plaintiff testified that, as the front of his motorcycle became even with the back of the truck, the truck's left-turn signal was still blinking. This was about thirty feet from Greeley Street. At this point, the plaintiff was on the right-hand side of the truck going down the middle of the lane, out about three feet, nine inches, from the curb. After

plaintiff passed the rear end of the truck, the beer truck without warning made a right-hand turn. The plaintiff's motorcycle collided with the rear wheels of the truck. At that time, the plaintiff testified that he was driving twenty to twenty-five miles per hour. Plaintiff did not sound his horn. He may have applied his brakes at the time of the collision, but not before. He remembered the truck going over him and being under the wheels, just dragging down the street. Plaintiff had no recollection of where he was located or where the cycle was located, except that he could see both the truck and motorcycle. The plaintiff suffered serious personal injuries. After the accident, he lay on his back looking straight up and could not move. Plaintiff remembered that the driver of the truck came up and said that he had not seen the plaintiff. The plaintiff told the police officer that he was hurting and should go to the hospital. The plaintiff did not tell the police officer how the accident happened. Stated simply, it was plaintiff's theory that the beer truck was proceeding south on 11th Street with its left-turn signal indicating a left turn. Plaintiff then proceeded to pass the truck on the right. The truck suddenly turned into him. The vehicles collided and the motorcycle was dragged by the truck from the point of impact until the truck stopped. The specific acts of negligence relied upon by the plaintiff were that the defendant driver executed an improper right turn, failed to give a proper signal for a right turn, and failed to keep a proper lookout.

Defendant Manard testified that when he left the grocery store after making his delivery, he observed the plaintiff's motorcycle parked behind his truck. He did not recall ever seeing the plaintiff. Defendant entered the truck, started the engine, pulled the brake off, and turned on his left-turn indicator. He checked his rearview mirror and then pulled away from the curb. He let the steering wheel turn the left-turn signal off, and then turned on the right-turn signal. This was about halfway down the block. The beer truck's speed was less than twenty miles per hour. After Manard turned on his right-turn signal, he never turned it off. The beer truck proceeded down 11th Street toward Greeley traveling approximately in the middle of the street. As the beer truck traveled south, the driver did not become aware of anyone behind; he did not hear any horn or screech of brakes. The driver started to turn his wheel to the right as the truck was even with

the sidewalk on Greeley Street. As the driver proceeded in his turn, he heard a noise that sounded like broken glass. He stopped, put on his flasher, got out of the truck, and saw the plaintiff in the street. The motorcycle was lying north of the truck on Greeley up against the curb and in the gutter. There was no damage to the rear of the truck and no broken glass. Stated simply, it was the theory of the defendants that the beer truck was proceeding with due care south on 11th Street toward the intersection with its right-turn signal blinking and properly commenced its turn to the right on Greeley Street. The specific acts of contributory negligence relied upon by defendants were that the plaintiff operated his motorcycle at an excessive rate of speed; failed to keep a proper lookout; made an improper attempt to pass on the right side of the beer truck; failed to stop, swerve, or turn aside to avoid a collision; and failed to sound his horn or otherwise signal his intention to pass the beer truck. It should be noted that the defendants did not claim that the plaintiff's motorcycle was following the beer truck too closely.

At the trial of the case, the plaintiff called as his first witness Tommy Smith, a relative of plaintiff's wife, who arrived at the scene after the collision had occurred. His testimony was restricted to a description of the scene and his observations of the plaintiff lying on the street along with the motorcycle. The plaintiff's second witness was Charles Gibson of the Kansas City, Kansas, Police Department, who testified in substance as follows: On April 17, 1974, Gibson was a police officer with the traffic division. He investigated the motorcycle-truck accident involved in this case. Following his investigation at the scene, he prepared a report of accident. Gibson was not familiar with motorcycles and he could not determine from the motorcycle's condition whether it was disabled from operation as a result of damage received in the collision. There was no damage to the truck. Gibson determined the point of impact between the motorcycle and truck to be at the extreme right side of the truck behind the right-dual wheels. No persons at the scene reported that they had seen the collision. There was no debris on the street from the impact itself. The officer observed what he described as skid marks or gouge marks on the street. He measured thirty-nine feet of gouge marks which he described as angling in a westerly direction from their point of beginning to the corner, going in a

radius around the corner. The thirty-nine feet of gouge marks were apparently made by the motorcycle. When he arrived at the scene, the defendants' truck was on Greeley Street facing west, with the dual wheels approximately at the west curb of 11th Street. The plaintiff's motorcycle was lying immediately behind the right-dual wheel. Neither vehicle had been moved. He found no defects in the lights, turn signals, or mirrors. Because of plaintiff's physical condition, Gibson did not take a statement from the plaintiff at the scene. Gibson never at any time obtained a statement from plaintiff Lollis as to his version of the accident. Officer Gibson talked with defendant truck driver at the scene about the accident and what led up to it. Defendant Manard told the officer that he was southbound on 11th Street, making a right turn to go westbound on Greeley. He heard the noise of an impact, stopped the truck, and saw that "somebody had *slid* into the right rear of his truck."

Officer Gibson was then cross-examined by defense counsel. It is this cross-examination which raises the claim of trial error now before the court for determination. On cross-examination, Gibson testified that, based upon the statements of the truck driver, *speculation* on his (the officer's) part, the final positions of the vehicles, and the gouge marks, he determined that, at the time of the incident in question, the truck was making a right turn and the motorcycle was going straight down the roadway. The witness was then asked by the defense counsel if he had made any determination as to what action on the part of either driver may have contributed to this incident. Plaintiff's objection that the question required an answer based on hearsay and speculation was sustained. Counsel also objected to the question on the grounds that conclusions as to the contributing factors contained in a police report are not admissible into evidence. The trial court ruled that the witness could state his conclusion as to what he found and how he reached his conclusion, if the proper foundation were laid. Officer Gibson then testified again as to his observation of the thirty-nine feet of gouge marks and his determination that they came from the motorcycle. He observed the position of the vehicles when he arrived at the scene.

The following questions were then asked by defense counsel and answers given by officer Gibson:

"Q. Now, based on those factors that you observed there at the scene did you

come to some conclusion as an investigative officer as to what driver's action may have contributed to this incident?

"FIELDS:  I object to that as being improper foundation for the purposes of the record.

"COURT:  He may answer.

"A.  Yes, sir.

"FIELDS:  I object to any further answers.

"RUSHFELT:  Let me ask the next question. Based on those factors that you did observe, what was your conclusion in that regard with respect to the driver's action that contributed to this incident that you show it there on your report?

"FIELDS:  Renew our objection on the basis of no proper foundation.

"COURT:  Overruled. You may answer.

"A.  Driver number one, which would be the Honda had illegally speeded and followed too closely.

"Q.  Did you show any contributing action by the driver of the truck?

"A.  None."

Following these questions and answers, Gibson testified that he did not talk to the plaintiff and did not know his version of the accident, but that they were, nevertheless, the best conclusions he could come to under the circumstances he found at the scene.

On redirect examination by plaintiff's counsel, the officer testified that he came to the conclusion that the motorcycle was moving at an illegal or unsafe speed solely and totally upon the presence of the gouge marks. He did not talk to the driver of the motorcycle nor had anyone else who had seen the movement of the vehicles prior to the collision. He did not see the motorcycle prior to the collision; nobody told him how fast the motorcycle was going at the time of the collision. Officer Gibson again stated that his conclusion that the motorcycle was going at an illegal or unsafe speed was based solely and wholly on the fact that the cycle skidded thirty-nine feet and laid down some gouge marks prior to the place he found it to be lying at the time he arrived at the scene. In regard to his conclusion that the motorcycle was following too closely, Gibson testified that nobody at the scene told him that prior to the impact the beer truck was driving well out into the middle of the street and signaling to make a left-hand turn and that the motorcycle was attempting to pass the truck in the clear right-hand lane. He agreed that, if those facts were correct, it was not the typical rear-end situation. Nobody at the scene told him that those were the facts. The first time he heard that version of what happened was right then at the trial. Officer Gibson did not think he would have come to different conclusions had he heard the plaintiff's version out at the scene. Gibson

testified that it was his job at the scene to *weigh the facts* and make determinations as to who is telling the truth and who isn't, along with the physical evidence at the scene. It is clear that the police officer talked only to defendant Manard and received only one side of the story.

On recross-examination by defense counsel, officer Gibson testified that, as of the date of the accident, he had been a member of the police force for ten years and had investigated in excess of a thousand accidents, involving all kinds of vehicles. The officer also stated that the contributing circumstances are part of his official report. Later, prior to the plaintiff's resting his case, his counsel moved for a mistrial based upon the admission of officer Gibson's conclusions as to the actions of the drivers which contributed to the accident. This motion was denied.

There was other evidence presented at the trial which need not be considered for a determination of the appeal. It is important to note, however, that, at the time officer Gibson testified, neither plaintiff Lollis nor defendant Manard had taken the stand to give their respective versions as to how the accident happened. The testimony of officer Gibson was based only on what he actually observed at the scene *and* what he was told at the scene by the defendant Manard. Following a verdict in favor of the defendants, plaintiff appealed to the Court of Appeals, claiming several trial errors. The Court of Appeals affirmed the trial court. This court granted review on the sole issue of whether the trial court erred in permitting officer Gibson to testify on cross-examination concerning his conclusions in the accident report discussed above.

We have concluded that the district court erred in admitting the conclusions of officer Gibson as to the contributing factors to the accident for two reasons: First, there was no proper foundation laid for the officer's conclusions; and second, the conclusions of the officer as to the contributing factors were not the proper subject of expert testimony. We will consider each of these matters separately. In *Spraker v. Lankin,* 218 Kan. 609, 612, 545 P.2d 352 (1976), we recognized that experienced police officers and troopers of the Kansas Highway Patrol, having the requisite experience and training, have frequently been permitted to express opinions as to the speed of vehicles involved in highway collisions, based upon evidence observed at the scene, including

direction of travel, skid marks, point of impact, damages to the vehicles, and the location in which the vehicles came to rest. We noted also that the receipt of opinion evidence by accident reconstruction experts and physicists has frequently been approved by this court. We further observed that the opinions of experts may be helpful to a court or jury in motor vehicle cases particularly where there are no eyewitnesses to a collision. However, such opinions must be based on reasonably accurate data available at the scene. Where there is little factual data, computations based upon assumption and speculation should not be received in evidence. In *Smith v. Estate of Hall,* 215 Kan. 262, 524 P.2d 684 (1974), we held that a police report of an accident investigation which contains statements of a hearsay character and conclusions on the part of the officer preparing the report is not admissible as substantive evidence. We emphasized that an expert's opinion is not admissible where an expression of opinion would require him to pass upon the credibility of witnesses or the weight of disputed evidence.

In a number of cases this court has held that a police officer's conclusions as to the "contributing factors" to an automobile accident, noted on his accident report, as distinguished from his recorded observation as to physical conditions, are inadmissible into evidence. In *Morlan v. Smith,* 191 Kan. 218, 380 P.2d 312 (1963), the accident report contained the statement "no improper driving indicated." The court held the admission of that portion of the report to be prejudicial error. The court reasoned that, in the first place, the report was hearsay, and, secondly—the statement, "no improper driving indicated," was a pure conclusion on the part of the investigating officer dealing with the very question of negligence which the jury was impaneled to try. Again in *Allen v. Ellis,* 191 Kan. 311, 380 P.2d 408 (1963), it was held that the admission of two officers' testimony that no arrest of the defendant was made nor any traffic ticket issued and the admission of one officer's report of his investigation and *conclusions* made thereon was highly improper and constituted reversible error.

In *McGrath v. Mance,* 194 Kan. 640, 642, 400 P.2d 1013 (1965), the officer's report indicated, under a column headed "Driver Violations Indicated," that the plaintiff had been guilty of "inattention" and "improper start from parked position." This court held that the trial court committed error in admitting and allow-

ing the officer to testify as to the conclusions therein contained. We pointed out that the officer's conclusions were nothing more than his opinion dealing with a question which was for the jury to decide—was the plaintiff negligent? The same rule is again followed in *Gardner v. Pereboom,* 197 Kan. 188, 194, 416 P.2d 67 (1966), where we held that the trial court properly refused to let counsel question a police officer as to the police officer's opinion of a reasonable maximum speed at the intersection under the circumstances surrounding the accident.

The cases just discussed follow the general rule recognized throughout the United States which excludes from admission into evidence portions of official reports of police officers relating to the cause or responsibility for an automobile accident. There are many cases on the subject cited in the annotation at 69 A.L.R.2d 1148.

Turning to the factual circumstances of the present case, officer Gibson testified that his conclusions as to the actions of the drivers which contributed to the accident were based upon the thirty-nine feet of gouge marks, the locations of the vehicles at the scene, and the statement of the truck driver made at the scene of the accident. The conclusion of the police officer that the plaintiff's motorcycle was exceeding the thirty mile-per-hour speed limit, of necessity, had to be based upon the assumption that the thirty-nine feet of gouge marks on the pavement occurred *prior* to the collision as the plaintiff applied the brakes in an attempt to stop the motorcycle and thus avoid the collision. In arriving at his conclusion as to illegal speed, the police officer relied, at least in part, upon the hearsay statement made to him by Manard, the driver of the beer truck. In so concluding, the officer had to weigh and reject or completely ignore the plaintiff's version of the accident. Officer Gibson's testimony was that the gouge marks seemed to angle in a westerly direction from their *point of beginning* to the corner and then went in a radius around the corner. There was testimony that *both* sides of the motorcycle were damaged and that the handle bars were bent together. This was evidence tending to prove that the motorcycle collided with the truck and then was dragged, along the street and under the truck, causing the gouge marks to be made on the street surface. There was no debris on the street to indicate the point of impact. The plaintiff testified that he did not apply his brakes before the

time of impact. This evidence was not known to officer Gibson at the time he prepared his report. Under the circumstances, we conclude that it was prejudicial error for the court to admit into evidence the police officer's conclusions in his police report that the plaintiff was driving his motorcycle at an illegal rate of speed, was following too closely, that these actions contributed to the accident, and, further, that he found no actions of the truck driver which contributed to the accident. In our judgment, there was insufficient factual data to serve as a foundation for the officer's conclusions. The conclusions were clearly based, at least in part, upon the hearsay statements of defendant Manard made at the scene, and the officer had to accept these statements as true to reach his conclusions. Under the circumstances, the trial court erred in admitting the officer's conclusions into evidence.

We now turn to the contention of the plaintiff that the conclusions of officer Gibson were inadmissible because such conclusions were not a proper subject for expert testimony. Prior to the enactment of the statutory rules of evidence contained in the 1964 Kansas Code of Civil Procedure (K.S.A. 60-401 *et seq.*), various Kansas decisions stated the general rule to be that the opinions or conclusions of a witness should not be received in evidence. Many decisions, however, recognized, as an exception to the general rule, that a witness having special knowledge and qualifications on subjects requiring special skills and studies could testify as to his opinion on matters within his field of expertise. The basis for the admission of expert opinion testimony was said to be *necessity.* (*Erb v. Popritz,* 59 Kan. 264, 59 Pac. 871 [1898].) More recently in *Massoni v. State Highway Commission,* 214 Kan. 844, 522 P.2d 973 (1974), the court discussed in depth the limitations on the admission of expert testimony. There the court noted the provisions of K.S.A. 60-456(*d*), which provides in substance that testimony in the form of opinions otherwise admissible is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of fact. It is emphasized in *Massoni* that, in spite of the broad language used in 60-456(*d*), opinion testimony on the ultimate issue or issues is not admissible without limitations. The court stated that, although an expert witness may be permitted to give an opinion bearing on the ultimate issue, he may do so only insofar as the opinion will aid the jury in the interpretation of technical facts or when it will

assist the jury in understanding the material in evidence. The court held that where the normal experience and qualifications of laymen jurors permit them to draw proper conclusions from given facts and circumstances, expert conclusions or opinions to be drawn from the facts and circumstances are inadmissible. It is obvious that these observations simply state, in a different way, that the basis for the admission of expert testimony is *necessity,* arising out of the particular circumstances of the case.

The rule limiting the introduction of expert testimony stated and followed in *Massoni* is the rule generally followed throughout the United States. See, for example, Jones on Evidence (Sixth Edition, Gard) §§ 14.27 and 14.28, which is quoted in part in the *Massoni* opinion. In 11 Blashfield Auto Law Revised 3rd Ed., Trial Evidence, § 431.1, it is stated:

"Expert testimony should be received only where the subject-matter is complicated and embraces matters not elementary or of common knowledge. Expert testimony is not desirable where the jury can get along without it, and it is admitted only when likely to be of aid to the jury.

". . . A witness may state opinions or conclusions when in possession of special skill or knowledge of the subject-matter thereof, and if inexperienced persons are likely to prove incapable of forming a correct judgment without the witness' opinion." (pp. 602, 604 & 607.)

In applying this rule, there is one situation where expert opinions on ultimate fact issues have almost universally been held to be inadmissible. In automobile negligence cases it is improper to submit to the expert witness all of the evidence on both sides and ask him what was the cause of the accident or injury. (Jones on Evidence [Sixth Edition, Gard] § 14.27.) The question of the admissibility of an expert's conclusions as to the cause of or contributing factors to an automobile accident has caused this court some difficulty. In *Ziegler v. Crofoot,* 213 Kan. 480, 516 P.2d 954 (1973), a highway patrolman, who had investigated the intersection collision in question, was permitted on cross-examination to testify, over objection, that in his written report under the column "Contributing Circumstances" he showed that the plaintiff driver failed to yield the right-of-way; in regard to the defendant driver, he indicated "None." On appeal, the plaintiff challenged admission of this testimony urging that the testimony "usurped the province of the jury by stating ultimate facts which should have been reserved for the jury's final determination." The

judgment was affirmed by a divided court, the majority opinion pointing out that under K.S.A. 60-456($d$) expert testimony in the form of opinions otherwise admissible is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of fact. The court held in syllabus ¶ 7 that in an intersection accident, if all of the requirements of 60-456($d$) are otherwise met, an expert may be permitted to give his opinion as to actions and circumstances of the parties, if any, which contributed to the accident. It is important to note, however, that on page 487 of the opinion, the court stated that to permit an expert to give his opinion on *who was at fault in causing an accident* is objectionable and should not be permitted.

The issue was again before the court in *Massoni v. State Highway Commission,* supra. In that case, the investigating highway patrolman was asked what he found, "if anything, to have been the contributing circumstance to this accident?" An objection to the question was overruled. The witness answered by stating that the *cause* of the accident listed on his report was improper overtaking on the part of one of the vehicles involved in the collision. It should be noted that the same question was asked the highway patrolman in both *Ziegler* and *Massoni*—whether the officer had determined any contributing factors in the accident? In each case the highway patrolman marked on his accident report certain boxes as to contributing circumstances of the accident. They both were asked to testify as to what they marked on the accident report and they both so testified. In *Massoni,* a majority of the court held *Ziegler* to be distinguishable on the basis that the officer in *Ziegler* gave his opinion as to what actions of the parties *contributed* to the accident, whereas in *Massoni* the officer testified who was *at fault in causing the collision.* Mr. Justice Owsley dissented in *Massoni,* stating that he was unable to draw any meaningful distinction between "contributed" to a collision and "caused" a collision with relation to the testimony of a witness.

The majority of the court in *Massoni* held that the officer's conclusion as to who was at fault in causing the accident was improperly received since the matters at issue in the case were not sufficiently beyond the common knowledge of ordinary persons that the opinion of an expert would be helpful to the jury. The case was not of a complicated or technical nature. In other words,

the situation was one where the normal experience and qualifications of laymen jurors would have enabled them to draw proper conclusions without the aid of expert conclusions or opinions. In such a situation, expert testimony is inadmissible. It is difficult to give any logical reason why the issue of the contributing factors to the accident was a matter beyond the normal experience and qualifications of laymen jurors in *Ziegler*, when the issue of who was at fault in causing the accident was held to be within the normal experience and qualifications of laymen jurors in *Massoni*.

In this case, we have reconsidered *Ziegler* and *Massoni* and have reached the conclusion that the distinction between "causing an accident" and "contributing to an accident" is a distinction without a difference. We have no quarrel with the rule recognized in *Spraker v. Lankin,* supra, that experienced police officers and reconstruction experts, having the requisite experience and training, should be permitted to express opinions as to the speed of vehicles involved in highway collisions when based upon the evidence observed at the scene of the accident, including direction of travel, skid marks, point of impact, damages to the vehicles, and the location in which the vehicles came to rest. We have concluded, however, that a highway patrolman or other expert may not properly state either his opinion as to which of the parties was at fault in causing an accident or his opinion concerning what actions of the parties contributed to the accident. An act of negligence which contributes to an accident must, of necessity, have at least a part in causing the accident. We note that in Webster's Third New International Dictionary 496 (3rd ed.), the word "contribute" is defined in a causal sense as "to have a share in any act or effect." Likewise, the word "contributing" is defined as something that "has a part in producing an effect." We, therefore, hold that in an automobile negligence case, an expert witness, whether an investigating police officer or another expert, may not state his opinion as to what actions of the parties, if any, contributed to the collision or as to who was at fault in causing the collision. We specifically overrule *Ziegler v. Crofoot,* supra, and *Massoni v. State Highway Commission,* supra, insofar as those decisions permit an expert witness to give an opinion in an automobile negligence case concerning what actions of the parties, if any, contributed to the collision.

The testimony of officer Gibson presented in this case was highly prejudicial. There is always the danger that a jury will be overly impressed by the testimony of a police officer who gives the impression of being clothed with public authority. In this case, as in most cases, counsel for defendants emphasized that the section of the accident report designating the "Contributing Circumstances" was a part of the officer's *official* report. We must recognize that a police officer in the performance of his duties is *required* to fill out the accident report at the scene of the accident. At that time no *complete* investigation of the accident has been made. Quite frequently unknown witnesses to the accident turn up later. At the scene the officer does not usually have the time to reflect on the physical facts and circumstances present and to consider them along with conflicting versions of the accident from the standpoint of different witnesses. The reliability of a police officer's conclusions recorded at the scene pertaining to the "contributing circumstances" is by its very nature suspect. Issues as to who was negligent and whose negligence contributed to or caused an automobile collision should properly be left for determination by the members of the jury. That is their function in a jury trial.

For the reasons set forth above the judgment of the Court of Appeals affirming the district court is reversed. The judgment of the district court is reversed and the case is remanded to the district court with directions to grant the plaintiff-appellant a new trial.

FROMME, J., concurring. K.S.A. 60-456 provides:

"(a) If the witness is not testifying as an expert his or her testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clearer understanding of his or her testimony.

"(b) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness.

"(c) Unless the judge excludes the testimony he or she shall be deemed to have made the finding requisite to its admission.

"(d) Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

When Officer Gibson testified at the trial no proper foundation had been laid for the officer's conclusions and it was reversible error to admit his speculative conclusions as to the circumstances which contributed to the accident.

However, as I interpret the provisions of the above statute subsection (a) authorizes any witness, after a proper foundation has been laid, to give opinions if such opinions are rationally based on the perception of the witness and helpful to a clearer understanding of his or her testimony. An expert when qualified may give an opinion based on both perception and facts otherwise made known to him at the hearing. Subsection (d) specifically says that if such opinions are otherwise admissible they are not objectionable because they embrace the ultimate issues to be decided by the trier of the fact.

I disagree with that part of the majority opinion which has the effect of nullifying subsection (d) of the statute.

McFARLAND, J., joins the foregoing concurring opinion.