No. 47,261

POPEJOY CONSTRUCTION Co., *Appellee,* v. LELAND CRIST, *Appellant.*

(522 P. 2d 180)

Opinion filed May 11, 1974.

*J. Stephen Nyswonger,* of Braun and Nyswonger, of Garden City, argued the cause, and *Lelyn J. Braun,* of the same firm, was with him on the brief for the appellant.

*Raymond L. Dahlberg,* of Turner, Chartered, of Great Bend, argued the cause and *Lee Turner,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This is an automobile-truck collision case. Plaintiff Popejoy Construction Co. brought suit for the cost of repairs to its truck and for the loss of its use; defendant Leland Crist counterclaimed for his personal injuries and the destruction of his automobile. The jury, in answer to special questions, found the defendant automobile driver negligent in driving at an excessive speed, in excess of the posted speed limit; in failing to stop or turn aside and avoid the collision; and in failing to keep his vehicle under proper control. It found the truck driver to be free from any negligence. The result was a judgment in favor of the construction company for $3,310.05, the exact amount prayed for. The defendant appeals.

The collision occurred on U. S. highway 83 just north of Garden

City, Kansas. The plaintiff construction company had been resurfacing the road for some two months prior to the accident. It maintained, throughout the 8 miles of the project, warning signs and barricades which included 40 m. p. h. speed limit signs placed every 750 feet. On the morning of July 8, 1972, the work was 99% complete; all that remained to be done was some shouldering work, picking up trash, and the painting of the dashes and no passing zones down the center of the highway.

At approximately 9:10 a. m. on that morning Ernest Holt, plaintiff's employee, was driving a large tandem-axled dump truck north on the highway to pick up a high-loader to use in the clean-up work. He was accompanied by another employee, Virgil Lenz. At a point approximately 4.4 miles north of the city limits of Garden City he commenced a left turn into a field on the west side of the road, where the high-loader was sitting. Before doing so he made a check of the traffic both in front and behind his truck and saw nothing. His turning radius was about 50 feet, and during the turn proper his attention was focused on a truck which was moving in the field, near the driveway he was about to enter. His turning speed was about 5 m. p. h. There was a small knoll to the north of the turn, which obstructed his view of oncoming traffic in a flat stretch beyond the knoll. He never did see defendant's car until after the collision. Lenz, his passenger, testified that there were heat waves rising from the asphalt pavement and that he didn't see defendant's car until its nose dipped shortly before impact.

The truck had almost cleared the pavement when it was struck at the right rear axle by defendant's southbound car. The impact moved the truck some sixteen feet to the south; it weighed 14,700 pounds empty. Its frame was twisted, several springs were broken, both tandem axles were torn loose, and the drive shaft was torn from the transmission.

Both plaintiff's and defendant's reconstruction experts agreed that defendant's car, after laying down 63 feet of skid marks, was going about 47 m. p. h. at the time of impact. Before braking plaintiff's expert put his speed at 89 to 99 m. p. h., defendant's expert at 59 to 63 m. p. h.

Defendant himself testified on direct examination that he had traveled for several miles through the 40 m. p. h. speed zone with his cruise control set at 70. He took it off cruise control as he

approached the knoll and was going about 65 m. p. h. before braking, and 45 to 55 m.p . h. at the time of braking. On cross-examination he was confronted with a previous statement in which he said that he had been going 40 to 45 m. p. h. for the last half mile before the collision. When pressed he adopted that estimate as being correct and asserted that "I don't believe either one of your experts."

On appeal defendant raises three points. The first is that he should have had a directed verdict on the contributory negligence of the truck driver. His argument is that the truck driver could and should have seen defendant's car approaching, and should not have turned in front of him. Allied with this contention, and argued with it, is his claim that the evidence was insufficient to establish negligence on his part. His theory here is that his speed, his failure to stop or swerve, and his failure to control his car (all found by the jury) could none of them have been a proximate cause of the accident. Only the turning of the truck, he says, contributed to the accident.

Looking at the testimony, we conceive it entirely possible for the jury to have found that defendant's car was hidden by the knoll or obscured by the heat waves when the truck started its turn, so that making the turn was not negligent. The jury could also have found that the arrival of defendant's car over the knoll at a high rate of speed was the proximate cause of the accident, coupled with his failure to have the car under control so that he could stop or turn aside to avoid the collision. Thus negligence, contributory negligence and proximate cause were all questions on which the evidence was conflicting and on which reasonable minds might differ. They were therefore, under well established rules, questions for the jury. *Sims v. Schrepel*, 208 Kan. 527, 492 P. 2d 1312; *Morris v. Hoesch*, 204 Kan. 735, 466 P. 2d 272; *Deemer v. Reichart*, 195 Kan. 232, 404 P. 2d 174. 4 Hatcher's Kansas Digest (Rev. Ed.), *Negligence*, §§ 71-75; 7A West's Kansas Digest, *Negligence*, § 136 (25) & (26).

Appellant's final point is that the court should not have instructed on the duty of a driver to "drive at an appropriate reduced speed when any special hazard exists by reason of weather or highway conditions." He contends that there was no evidence of any special hazard which would justify giving the instruction.

Plaintiff, on the other hand, points to the testimony of Thomas B. Quinn, a state highway engineer acting as safety inspector for the

project who checked the road two or three times on the day of the accident. His 6:50 a. m. tour of the route revealed that all warning signs, barricades, speed limit signs and flashers were in place. By 8:00 or 8:30 there were men scattered up and down the road picking up trash and doing shoulder work, and graders, a roller and dump trucks working on the shoulders. The pavement was not lined, and the no passing zone where the accident occurred had not yet been marked. From this we think the jury could have found that the "highway conditions" presented a "special hazard" which would bring the challenged instruction into play. Since the instruction was germane to the issue of defendant's negligence and supported by some evidence it was properly given. *Prior v. Best Cabs, Inc.,* 199 Kan. 77, 427 P. 2d 481.

This is basically a fact case in which the issues were properly submitted to and determined by the jury. There being competent evidence to support their verdict, it cannot be disturbed on appeal.

The judgment is affirmed.

APPROVED BY THE COURT.