(630 P.2d 162)

No. 51,558 ■

ROBERT PORTWOOD and JOHN R. DAVIS, *Appellees,* v. CITY OF LEAVENWORTH, KANSAS, *Appellant.*

Opinion filed May 1, 1981.

*Robert D. Beall,* of Leavenworth, for the appellant.

*James N. Snyder* of Snyder and Snyder, of Leavenworth, for the appellees.

Before JUSTICE McFARLAND, presiding, SPENCER, J., and RON ROGG, Associate District Judge, assigned.

SPENCER, J.: Two actions for damages for injuries caused by mob action were consolidated for trial and resulted in jury verdicts in favor of Portwood for $25,000 and in favor of Davis for $75,000. Defendant has appealed.

The events which gave rise to these cases took place in the northeast section of Leavenworth during the late afternoon of June 21, 1976.

## IN RE PORTWOOD

Portwood, a journeyman plumber, was working at the Iatan Power House near Weston, Missouri. At about 4:30 p.m. he left work and began his trip home to Lansing, via the truck route through Leavenworth. He was driving a 1973 Pontiac automobile with the air conditioner operating and the windows closed. Portwood testified that, while traveling on 3rd Street near the intersection of 3rd and Kiowa, he observed a large group of people on the southeast and northwest corners of the intersection. When asked what he meant by a large group, he estimated the size of each group at 15-20 individuals. He stated these groups were "[m]illing around on the corner; partly in the street; partly on the sidewalk."

As Portwood entered the intersection, a brick was thrown through the left side window of his car and struck him in the head near his left eye. He did not see the individual who threw the brick but indicated it was thrown from among the group milling

about the southeast corner of the intersection. After being struck, Portwood drove his vehicle approximately three blocks, where he stopped to wipe the blood from his eye. He testified he stopped again later for the same purpose before reaching his home, after which he was taken to St. John's Hospital.

At the hospital, Portwood was x-rayed and received stitches to the wound to his head. The following day Portwood was transported to the University of Kansas Medical Center where, after two days of observation and testing, he underwent surgery to reconstruct his fractured left cheekbone, together with a fracture in the orbital rim. He also testified he was informed an operation had been performed on his eyelid to enable him to open his eye. The surgery consisted of realigning and repositioning the portions of fractured bone. His doctor testified Portwood was well on his way to a full recovery when he was last examined in August of 1976. Portwood testified he was off work for a period of 5-6 weeks and, upon returning to his job at the power plant, learned he had been laid off due to a reduction in the work force.

## In Re DAVIS

At about 5:00 p.m. that afternoon, Davis, employed as a truck driver hauling asphalt, drove his truck along the truck route through northeast Leavenworth. He turned his truck onto 3rd Street headed south and testified he observed a small yellow car swerving around with people hanging onto the car and glass flying. He estimated there were 25-30 people on both sides of 3rd Street. Davis decided to pass the car and, as he did so, a man threw a brick into the windshield of his truck. At almost the same time, bricks were thrown through both sides of his truck and he was struck and rendered unconscious. Davis regained consciousness at the University of Kansas Medical Center in Kansas City, where he was a patient for about ten days after surgery to have a plastic plate implanted in his skull.

Davis' physician at the Medical Center testified that Davis sustained injuries to both the left and right sides of his head. Specifically, Davis sustained a depressed comminuted fracture in the right occipital (back) area, and a small hematoma (blood clot) developed in association with the fracture. The physician testified the covering of Davis' brain was lacerated and that a blood vessel on the surface of the brain was bleeding. In order to correct the depressed skull fracture on the right side of Davis' head, a piece of bone approximately four centimeters in diameter was

removed, the brain covering was repositioned, and the missing piece of skull was replaced by pouring quick-setting plastic to form a plastic plate. Davis also sustained a laceration of the left zygoma, that portion of the head where the skull and face meet.

Between the time Davis left the hospital until the date of the physician's deposition, Davis returned five times. He complained of headaches, occasional double vision, and difficulty with vision. The physician stated that although Davis suffered initial loss of peripheral vision, that condition had declined and, in fact, had all but disappeared. Davis' physician was questioned concerning the possibility of Davis developing epilepsy as a result of his head injuries. He stated if someone such as Davis does not develop epilepsy within two years after the injury, the odds of subsequently doing so are quite small, though still possible. The physician stated in his opinion it would be fair to say Davis had made a complete recovery from his head injury. As to whether or not Davis continued to suffer from headaches and whether Davis' eyes were functioning properly, he stated headaches are a completely subjective symptom, and that, while it appeared Davis' eyes were functioning normally, only an ophthalmologist could conclusively determine the same.

Davis testified six months elapsed before he was able to return to work; his nerves were not as good; his balance was affected; he was easily upset; his vision was not as good, sometimes suffering from double vision; and that loud noises caused him to have headaches.

## GENERAL

In addition to plaintiffs, numerous individuals were similarly attacked on the afternoon in question while traveling on 3rd Street near the intersections of Dakota and Kiowa. The impetus for the disturbance apparently was a shooting death in a northeast Leavenworth bar in the early morning hours of June 21, 1976. It appears friends of the victim were enraged by the fact the suspect was charged only with second-degree murder.

Initially it is argued it was error to deny defendant's motion for a directed verdict. In this connection, defendant contends there is nothing in the record to show a group of ten or more persons intent on unlawful violence, and suggests there was an attempt to merge many separate isolated incidents occurring over a period of more than 24 hours to convey an image of such mob activity, all of which incidents involved but two or three individuals. De-

fendant's position is that the evidence failed to show there was a mob or that plaintiffs' injuries were caused by mob action.

In *Traylor v. Wachter,* 227 Kan. 221, 228, 607 P.2d 1094 (1980), it is stated:

"In reviewing a motion for a directed verdict and/or a motion for judgment notwithstanding the verdict, the court must consider the evidence in a light most favorable to the opposing party. [Citation omitted.] The court does not weigh evidence but must accept as true all the facts which the evidence tends to prove and draw against the party making the motion all reasonable inferences most favorable to the party opposing the motion and if the evidence is of such character that reasonable men in an impartial exercise of their judgment may reach different conclusions, the case should be submitted to the jury. [Citations omitted.] The appellate court must do the same."

K.S.A. 12-203 (since repealed) provided in pertinent part:

"A city shall be liable in damages for injuries to persons or property caused by the action of a mob within the corporate limits of the city if the city police or other proper authorities of the city have not exercised reasonable care or diligence in the prevention or suppression of such a mob."

K.S.A. 12-204 (since repealed) provided the definition of a "mob": "As used in this act, the word 'mob' shall mean an assemblage of ten (10) or more persons intent on unlawful violence either to persons or property."

In support of its position, defendant cites *Commercial Union Ins. Co. v. City of Wichita,* 217 Kan. 44, Syl. ¶ 4, 536 P.2d 54 (1975), where it was said:

"While not every member of a mob must personally participate in causing any particular damage or injury, before it may be said that such damage or injury is 'caused by the action of a mob' there must be some sort of mob participation. At the very least the immediate influence of the mob must be exerted on those members who do physically cause the damage or injury."

It is not the function of an appellate court to weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. Its only concern is with evidence which tends to support findings and not with evidence which might have supported contrary findings. *Addis v. Bernardin, Inc.,* 226 Kan. 241, Syl. ¶ 2, 597 P.2d 250 (1979). If the evidence with all reasonable inferences to be drawn therefrom, when considered in a light most favorable to the successful party below, will support the verdict, an appellate court should not intervene. *Timsah v. General Motors Corp.,* 225 Kan. 305, Syl. ¶ 1, 591 P.2d 154

(1979). See also *Kleibrink v. Missouri-Kansas-Texas Railroad Co.,* 224 Kan. 437, Syl. ¶ 2, 581 P.2d 372 (1978).

Some 28 witnesses testified on behalf of plaintiffs. To review their testimony would unnecessarily enlarge this opinion. Suffice it to say we have examined the record and find ample evidence from which the jury might properly have determined there was an assemblage of ten or more persons, intent on unlawful violence, which resulted in plaintiffs' injuries.

It is also argued there was no basis in the evidence for the jury to conclude the City had not exercised reasonable care or diligence in the prevention or suppression of such mob, if one did exist. Clearly, the evidence amply supported the finding that the police were aware of the activities on 3rd Street, yet failed to act to disperse the crowd or to seal off the area to passing motorists. The judge's offhand comment, made at argument on defendant's motion for new trial, to the effect that he was not sure what more the police could have done, is irrelevant to the jury's obvious determination that more could have been done.

Negligence, contributory negligence, and proximate cause are all issues to be determined by the jury. It is only when it can be said that reasonable men could reach but one conclusion from the same evidence that any of them may be decided as a question of law. *Popejoy Construction Co. v. Crist,* 214 Kan. 704, Syl. ¶ 1, 522 P.2d 180 (1974). The evidence presented in this case does not compel the conclusion the police acted reasonably in protecting the lives and property of motorists who traveled the truck route on the afternoon of June 21, 1976.

Plaintiffs' exhibits 2-20 (police incident reports), both inclusive, were offered and admitted into evidence over defendant's objections. Exhibit 2 is a copy of the police report of the shooting incident which presumably precipitated the unrest about which all of the remainder of the reports were made. Exhibits 3-20, which reflect reports made to the Leavenworth police by as many persons including plaintiffs, contain narrative statements of events which occurred on June 21. They also contain conclusory words such as "[r]iot," "[r]iot situation," "[t]o brink of riot," and "[d]riving through the riot torn area." Defendant contends the reports contained hearsay and conclusions either of the declarants or the recording officers, and that the admission of such reports into evidence was an invasion of the province of the jury. On the other hand, plaintiffs contend that, because of the nature

of this action, the police reports were relevant to show the city police were fully aware of what was going on that day; and if there was hearsay material contained within the reports, said reports were nevertheless admissible under various exceptions to K.S.A. 60-460.

Bearing in mind the nature of this cause and that it was necessary to show awareness of the disturbance by the city police in order to establish lack of reasonable care or diligence in the prevention or suppression of the disturbance, we conclude that the exhibits in question were relevant and properly admissible. See *Smith v. Estate of Hall*, 215 Kan. 262, 524 P.2d 684 (1974).

Defendant complains of an alleged prejudicial remark made by the trial judge during direct examination of its expert witness Maynard Brazeal. Brazeal was asked how he would have responded to the situation in northeast Leavenworth and his response was to the effect the police had done all that was possible under the circumstances. An objection was entered by plaintiffs' counsel and the judge remarked: "No, his answer can stand. He's telling you what's wrong with the setup, if you'll just listen." As stated in *Plains Transport of Kansas, Inc. v. Baldwin,* 217 Kan. 2, 10, 535 P.2d 865 (1975):

"[N]o comment or remark should be made by a judge, during the trial of an action, which may tend to excite prejudice or hostility in the minds of the jurors toward one of the party-litigants, or sympathy for the other, *but a mere possibility of prejudice from a remark of the judge is not sufficient to overturn a verdict or judgment, and, where a construction can properly and reasonably be given to a remark which will render it unobjectionable, it will not be regarded as prejudicial."* Emphasis added.

The jury was instructed that it was not to consider or draw inferences from rulings of the court upon evidentiary objections, and that verdicts were to be based entirely upon the evidence adduced at trial and the law as set forth in the instructions. We find no error.

Defendant argues the damages awarded were excessive and the trial judge was shocked at the verdict. The comments of the trial judge: "I think that the jury did a pretty good job on Mr. Portwood," and, "But I don't think that the verdict for Mr. Davis is excessive to the extent that the Court is shocked about it," would seem to be contrary to defendant's assertion on this point.

In *Thurman v. Cundiff,* 2 Kan. App. 2d 406, Syl. ¶ 12, 580 P.2d 893 (1978), this court stated:

"A court is powerless to reduce the verdict of the jury in an action for unliquidated damages and render judgment for a less amount unless the party in whose favor the verdict was rendered consents to the reduction. The proper course if a remittitur is refused is to set aside the verdict and grant a new trial."

In *Kirk v. Beachner Construction Co., Inc.*, 214 Kan. 733, Syl. ¶ 1, 522 P.2d 176 (1974), it was held:

"Where the charge of excessive verdict is based on the passion or prejudice of the jury and depends for support solely on the size of the verdict, the trial court will not be reversed for refusing a new trial, nor will a remittitur be ordered, unless the amount of the verdict in the light of the evidence shocks the conscience of the appellate court."

The verdicts entered do not shock the conscience of this court.

We have considered the remaining points on appeal and find them to be without merit. Affirmed.